**Walter H. HYDE**

v.

**The UNITED STATES.**

**No. 176-52.**

United States Court of Claims.

April 3, 1956.

Samuel T. Ansell, Jr., Washington, D. C., for plaintiff. Burr Tracy Ansell and Ansell & Ansell, Washington, D. C., were on the briefs.

John R. Franklin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff, now receiving retirement pay as a Reserve officer under title III, Act of June 29, 1948, 62 Stat. 1081, 1087, as amended, 63 Stat. 693, 10 U.S. C.A. § 1036a, asks to be adjudged entitled to additional service credit in the computation thereof and also certain retroactive retirement pay.

Two questions are presented in this case: (1) Is service as a U. S. property and disbursing officer "active Federal service" within the meaning of title III of the Act of June 29, 1948, supra; (2) is an officer who on June 29, 1948, was fully qualified by age and service to receive retirement pay as provided by title III of the Act of June 29, 1948, supra, entitled to receive such pay effective from that date when he was informed in October 1948, by the Department of the Army, that he was not qualified to receive such pay and, accordingly, did not make formal application therefor until January 1950.

The plaintiff was born March 20, 1881. He served as an enlisted man in the Tennessee National Guard from March 4, 1904, to March 6, 1905, and as a commissioned officer in such National Guard from March 7, 1905, to October 8, 1917. He was on active duty as a major, United States Army, from October 8, 1917, until his honorable discharge May 10, 1919. He also served as a major and subsequently as a lieutenant colonel in the Officers' Reserve Corps, the Tennessee National Guard, and the National Guard of the United States during the period from January 14, 1922, until his resignation November 20, 1937.

The Governor of the State of Tennessee by letter of March 27, 1933, to the Secretary of War made the following appointment with reference to the plaintiff:

Sir: By authority contained in Section 67 of the National Defense Act, the appointment of Lieutenant Colonel Walter Horton Hyde, Inf., Inspector General's Department, State Staff, Tennessee National Guard, as United States Property and Disbursing Officer for Tennessee is announced, effective April 1, 1933, vice Major Augustus Knox Alexander, who has tendered his resignation, effective March 31, 1933.

Approval of this appointment is requested.

Respectfully.

Hill McAlister,
*Governor.*

The Chief of the Militia Bureau by letter of April 17, 1933, to the Adjutant General of Tennessee approved the appointment of plaintiff as follows:

1. The appointment by the Governor of Tennessee of Lt. Col. W. H. Hyde, as United States Property and Disbursing Officer for Tennessee, is hereby approved effective April 1, 1933, vice Major Knox Alexander, relieved.

2. Colonel Hyde's bond, dated April 1, 1933, on which the Standard Accident Insurance Company of Michigan is surety, in the penal sum of $20,000.00, was approved on April 14, 1933.

3. The salary of Colonel Hyde is hereby fixed at the rate of $1,300.00 per annum, effective April 14, 1933.

4. Colonel Hyde is also designated as National Guard Contracting Officer for the State of Tennessee and as Transportation Officer, effective April 1, 1933.

By authority of the Secretary of War:
George E. Leach,
*Major General,*
*Chief, Militia Bureau.*

Under this appointment plaintiff was employed in the capacity indicated until November 20, 1937. Plaintiff claims to have served in a similar capacity as property and disbursing officer from January 31, 1916, to October 7, 1917, although no copies of orders or appointment relating to this period have been produced.

In 1948, following enactment of the Act of June 29, 1948, plaintiff wrote the Adjutant General of the Army for a statement of his service for the purpose of enabling him to make application for the retirement pay provided in the act. He later, in the same year, made personal inquiry of the National Guard Bureau as to the procedure to be followed, but was advised he had insufficient service. On January 25, 1950, plaintiff addressed to the adjutant general a formal application for retirement pay benefits under the 1948 act. While this application was denied, under the then current administrative interpretation as to the nonallowability of credit for service in

the National Guard prior to 1916, plaintiff has been retired, subsequent to this court's decision in Price v. United States, 104 F.Supp. 99, 121 Ct.Cl. 664, and has been allowed back pay from February 1, 1950. The Comptroller General denied any further back pay on the basis of Special Regulations 135–260–1 of the Department of the Army.

Plaintiff has received credit for numerous periods of active duty during 1933–1937, which are conceded to have been periods of training duty, but except for these intervals of training, his rate of pay has not included credit as "active Federal service" for the period while serving under appointment by the governor as U. S. property and disbursing officer for Tennessee.

Plaintiff contends that service as property and disbursing officer was "active Federal service" within the meaning of section 303 of the Act of June 29, 1948, supra.

Section 302(a) of the 1948 act, supra, provides for the retirement with pay of certain National Guard and Reserve officers, and reads in pertinent part as follows:

"Any person who, upon attaining or having attained the age of sixty years, has performed satisfactory Federal service as defined in this section in the status of a commissioned officer, * * * in the Army of the United States * * *, including the respective reserve components thereof, and also including the federally recognized National Guard prior to 1933, * * * and has completed an aggregate of twenty or more years of such satisfactory service in any or all of the aforesaid services, shall, upon application therefor, be granted retired pay: * * *."

It was under this section plaintiff retired and is now receiving retired pay. Plaintiff now seeks under section 303 of the above act to have included as "periods of active Federal service" the years spent as property and disbursing officer of the Tennessee National Guard, in order to increase the rate of his retired pay.

Section 303 provides:

"Any person granted retired pay pursuant to the provisions of this title shall receive such pay at an annual rate equal to 2½ per centum of the active duty annual base and longevity pay which he would receive if serving, at the time granted such pay, on active duty in the highest grade temporary or permanent, satisfactorily held by him during his entire period of service, multiplied by a number equal to the number of years and any fraction thereof (on the basis of three hundred and sixty days per year) which shall consist of the sum of the following:

"(i) All periods of active Federal service:

"(ii) One day for each point credited pursuant to subparagraphs (2) and (3) of subsection (b) of section 302 of this Act, but no more than sixty days shall be credited on this basis in any one year for the purposes of this section:

"*Provided,* That no person shall be entitled to receive such retired pay at an annual rate in excess of 75 per centum of said active duty pay: *Provided further,* That for each year of Federal service, other than active Federal service, performed as a member of a reserve component prior to July 1, 1949 and credited in accordance with subsection (c) of section 302 of this title, such member shall be credited with fifty days for each of such years, for the purposes of this section."

Section 306(d) of the above act defines the term "active Federal service" as follows:

"The term 'active Federal service' shall include all periods of annual training duty and all prescribed periods of attendance at such service schools as have been, or may be designated as such by the Secretary

of the Army, the Secretary of the Navy, and the Secretary of the Air Force for their respective services, or by law, or any other period of time when ordered to active duty under competent Federal orders."

Plaintiff concedes he has received credit for (1) all periods of annual training duty, (2) all periods of attendance at service schools designated by the Secretary of War, and (3) all periods of time when he was ordered to active duty under competent Federal orders. He insists, however, that he should be given credit for active duty for the periods during which he was employed as property and disbursing officer.

Section 67 of the National Defense Act of 1916, 39 Stat. 166, 199, as amended by the Act of July 9, 1918, 40 Stat. 845, 878, under which plaintiff was appointed property and disbursing officer, provides:

"The governor of each State and Territory and the commanding general of the National Guard of the District of Columbia shall appoint, designate, or detail, subject to the approval of the Secretary of War, the Adjutant General or an officer of the National Guard of the State, Territory, or District of Columbia, who shall be regarded as property and disbursing officer of the United States. He shall receipt and account for all funds and property belonging to the United States in possession of the National Guard of his State, Territory, or District, and shall make such returns and reports concerning the same as may be required by the Secretary of War. The Secretary of War is authorized, on the requisition of the governor of a State or Territory or the commanding general of the National Guard of the District of Columbia, to pay to the property and disbursing officer thereof so much of its allotment out of the annual appropriation for the support of the National Guard as shall, in the judgment of the Secretary of War, be necessary for the purposes enumerated therein. He shall render, through the War Department, such accounts of Federal funds intrusted to him for disbursement as may be required by the Treasury Department. Before entering upon the performance of his duties as property and disbursing officer he shall be required to give good and sufficient bond to the United States, the amount thereof to be determined by the Secretary of War, for the faithful performance of his duties and for the safekeeping and proper disposition of the Federal property and funds intrusted to his care. He shall, after having qualified as property and disbursing officer, receive pay for his services at a rate to be fixed by the Secretary of War, and such compensation shall be a charge against the whole sum annually appropriated for the support of the National Guard: *Provided,* That when traveling in the performance of his official duties under orders issued by the proper authorities he shall be reimbursed for his actual necessary traveling expenses, the sum to be made a charge against the allotment of the State, Territory, or District of Columbia: *Provided further,* That the Secretary of War shall cause an inspection of the accounts and records of the property and disbursing officer to be made by an inspector general of the Army at least once each year: *And provided further,* That the Secretary of War is empowered to make all rules and regulations necessary to carry into effect the provisions of this section."

From the reading of the above act it is apparent that plaintiff was under no "competent Federal orders" when he embarked on his duties in connection therewith. He merely was appointed by the Governor of Tennessee to do a job, and the fact that approval of his appointment by the Secretary of the Army was

necessary, cannot be construed to mean he was "ordered to active duty under competent Federal orders."

U. S. property and disbursing officers are not subject to military orders or military disciplinary action. Plaintiff could quit at any time, could be removed by the Governor of Tennessee at any time, and could not be ordered out of the State of Tennessee. It would indeed be a novel situation wherein a man ordered to active duty under competent Federal orders could be so removed.

Furthermore, the act provides that the governor can appoint the adjutant general of the state to such position. Certainly the adjutant general cannot be said to be ordered to active duty under competent Federal orders. He would assume the mixed duties and responsibilities arising out of the Federal and State relationship with respect to National Guard matters. It is to be noted in that respect that the National Defense Act, supra, also provided a salary for the increased responsibilities. It is also to be noted that the salary authorized ($1,300 per annum) has no connection with any salary paid any member of the military forces of the United States. Furthermore, he could be prosecuted under Federal criminal law for the mishandling of Federal funds in his possession. Woodford v. United States, 8 Cir., 77 F.2d 861. Nowhere does it appear, that he could be court-martialed therefor. Moreover, he has always been regarded as a state officer and not subject to the Federal annual leave laws. 19 Comp.Gen. 326.

Viewed in the light of the evidence and findings in this case, plaintiff's service as property and disbursing officer of the United States could not be considered as active Federal service within the meaning of section 303 of the Act of June 29, 1948, supra.

■ Plaintiff's next contention is that he is entitled to receive retirement pay effective from the date when he was informed in October 1948 by the Department of the Army that he was not qualified to receive such pay.

Plaintiff had reached the age of 60 years and completed the required military service when the Act of June 29, 1948, was enacted. In October 1948, before the effective date of title III of the act, he inquired of the Department of the Army as to his eligibility for retirement pay under title III and as to the procedure which he should follow in order to obtain such pay. He was informed by the Army that he did not have sufficient service for retirement pay under the act. He accordingly postponed making formal application for such pay until January 1950.

Plaintiff failed to apply for retirement pay in October 1948 solely because the Army advised him that he was not qualified. Inasmuch as he did apply in January 1950 and was denied, it naturally follows that his application would have been denied if filed earlier. However, since he did apply in January 1950, this portion of plaintiff's claim is on all fours with the case of Seagrave v. United States, 128 F.Supp. 400, 131 Ct.Cl. 790. The court in that case held that a retired Reserve officer over 60 years of age with more than 20 years' service on January 29, 1948, has the right to receive retirement pay under title III, Act of June 29, 1948, commencing on that date, once his application therefor has been approved, without regard to when he made application. Accordingly, plaintiff is entitled to retired pay for the period June 29, 1948, to January 31, 1950, as computed.

Plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to rule 38(c) of the Rules of this court, 28 U.S.C.A.

Defendant has filed a counterclaim alleging an overpayment to plaintiff as U. S. property and disbursing officer, in the sum of $109.40. No evidence was introduced by defendant in support thereof, and no finding of fact with regard thereto was made by the commissioner of this court. For failure of

proof the defendant's counterclaim is dismissed.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.