**Wallace GANT, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 421–88C.**

United States Claims Court.

Oct. 23, 1989.

Thom K. Cope, Lincoln, Neb., attorney of record, for plaintiff.

William K. Olivier, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

### OPINION

REGINALD W. GIBSON, Judge:

Wallace Gant (plaintiff) is a former member of the HQ 155th TAC Recon Group Nebraska Air National Guard (NEANG). Plaintiff petitions this court to correct his military records to reflect a retirement date commencing April 15, 1983, rather than September 1, 1984. Consequently, he seeks $21,845.00 in retirement back pay for a 16½ month period between his involuntary honorable discharge from active sta-

tus on the former date and his subsequent retirement on September 1, 1984. On February 12, 1986, plaintiff filed an application for the correction of alleged injustices in his military records. However, it was denied by the Air Force Board for the Correction of Military Records (AFBCMR) without a hearing on April 8, 1987. Thereafter, he filed a petition in this court on July 20, 1988, alleging arbitrary and capricious action on behalf of the AFBCMR in its refusal to correct his records. On February 1, 1989, the United States (defendant) moved to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1), or, in the alternative, for summary judgment pursuant to RUSCC 56(b). On March 29, 1989, plaintiff initially filed a memorandum in opposition, purporting to address both the motion to dismiss and the motion for summary judgment. Later, on October 3, 1989, he filed a cross-motion for summary judgment.

For the reasons stated herein, and following oral argument on September 25, 1989, defendant's motions are denied, and plaintiff's cross-motion is granted. Accordingly, we order the AFBCMR to correct plaintiff's records to reflect a retirement date of April 15, 1983, with benefits and the proper amount of ensuing back pay commencing and payable from and after May 1, 1983.

*Facts*

Plaintiff was involuntarily released from active status[1] with the NEANG[2] on April 15, 1983. At the time, he carried the rank of E-8 and served as a recruiter. His discharge stemmed from the expiration of his term of service, and he was thereafter not permitted to re-enlist.[3] Plaintiff was the victim of mandatory NEANG force reductions at the grade in which he served. While plaintiff's performance as a NEANG recruiter was generally satisfactory, he was not permitted to re-enlist because he allegedly did not execute his duties as well as other NEANG recruiters. Thus, the manpower reduction was a comparative process, which resulted in the discharge of 10 men, including plaintiff.

Believing that his discharge was motivated by racial discrimination on the part of several NEANG officers, plaintiff immediately commenced a law suit in the U.S. District Court for the District of Nebraska. He thereby sought a preliminary injunction to enjoin the involuntary honorable discharge instituted by the NEANG. Plaintiff's suit was subsequently dismissed on July 22, 1983, because he was unable to satisfy the applicable test for a preliminary injunction.[4] In particular, the federal district court found that plaintiff did not make a required showing on the issues of irreparable harm, wherein it was noted that plaintiff's eligibility for retirement benefits

1. Active status is the term used to describe the nature of assignment given to all reserve members, except those on the inactive status list or in the retired reserve. AFR 35-7, Attachment 1, no. 4 (September 15, 1981). This is to be distinguished from active duty, which describes the active military service rendered by regular officers, regular airmen, and·reserve members serving on extended active duty. AFR 35-7, Attachment 1, nos. 1 and 3 (September 15, 1981).

2. The NEANG, like all components of the United States Air National Guard, is a reserve component of the United States Air Force. AFR 35-7, Attachment 4 (September 15, 1981).

3. The retention process was based on regulations and policy set down by the United States Air Force through its National Guard Bureau. Each state guard unit is allocated a specific membership size with specific ranks to be filled. Therefore, a low ranking member, despite the quality of his performance, cannot advance if the upper ranks are already filled. In order to

maintain force vitality, the National Guard Bureau established a policy of reviewing enlisted personnel for retention after they have completed a specific number of years of service. Thus, under ANGR 39-06, plaintiff became eligible for review and was so reviewed by a retention board in June, 1982. The selective retention board thus recommended that plaintiff not be retained, and this recommendation was upheld by the appeals board based upon the need to revitalize the force.

4. In order to succeed on his petition for a preliminary injunction, plaintiff was required to adduce evidence for the court's consideration relevant to four factors: (1) the threat of irreparable harm; (2) the balance of hardships caused by granting an injunction; (3) the probability of success on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

was a factor which negated such a threat, and the likelihood of success on the merits. That decision was affirmed by the Court of Appeals for the Eighth Circuit in a *per curiam* opinion on June 28, 1985. *Gant v. Binder*, 766 F.2d 358 (8th Cir.1985).

Plaintiff was 48 years old when he was discharged on April 15, 1983. At that time he had rendered 28 years and 7 days of service for basic pay with the NEANG and 24 years and 26 days of service for retirement purposes. Although he was qualified to apply for voluntary retirement status immediately upon discharge,[5] plaintiff chose not to do so on the advice of counsel. Plaintiff did not want to create the impression that he agreed with or consented to the discharge action and thereby create the appearance of inconsistent positions. Nonetheless, Headquarters, Air Reserve Personnel Center (HQ ARPC), issued Reserve Order EK-0378, which *automatically* assigned plaintiff to the Air Force Reserve, Nonaffiliated Reserve Section (NARS) on April 17, 1983.[6] Plaintiff did not request this assignment.[7] However, on November 7, 1983, three and one-half months after the dismissal of plaintiff's suit in federal district court on July 22, 1983, HQ ARPC issued Reserve Order EK-2344, which revoked the previous assignment to the NARS. Said revocation was ordered because the plaintiff never submitted a formal application for transfer to the retired reserve, notwithstanding the fact that HQ ARPC previously effected the aforementioned unrequested transfer to the NARS. Thus, HQ ARPC unilaterally removed plaintiff from retired reserve status in the NARS, retroactive to the date of his involuntary discharge from the NEANG on April 15, 1983. On July 2, 1984, plaintiff enlisted in the Air Force Reserve,[8] and he applied for voluntary retirement in enlisted status on July 21, 1984, via AF Form 1160. On August 10, 1984, by Retirement Special Order AC-11741, AF Form 2655, plaintiff's voluntary retirement

5. According to Air Force retirement regulations, servicemen below the grade of colonel must submit AF Form 1160 to apply for *voluntary* retirement. AFR 35-7, paragraph 1-5 (September 15, 1981).

6. As both the authority and reason for its action, Reserve Order EK-0378 lists an Air Force retirement regulation which states: "b. Members listed below *may apply* for transfer or assignment to the Retired Reserve; ... (2) Reserve members eligible for retired pay under 10 U.S.C. 1331, except for reaching age 60." AFR 35-7, paragraph 8-5(b)(2) (September 15, 1981) (emphasis added).

10 U.S.C. § 1331 outlines age and service requirements for retirement pay:

(a) Except as provided in subsection (c), *a person is entitled, upon application,* to retired pay ... if—

(1) he is at least 60 years of age;

(2) he has performed at least 20 years of service....

\* \* \* \* \* \*

(b) Application for retired pay under this section must be made to the Secretary of the military department....

\* \* \* \* \* \*

(e) Notwithstanding section 8301 of title 5 [uniform retirement date, *see* note 9, *infra* ], *the date of entitlement to retired pay under this section shall be the date on which the requirements of subsection (a) have been completed.*

10 U.S.C. § 1331 (1988) (emphasis added).

7. Servicemen are to use AF Form 131 to apply for transfer or assignment to the retired reserve. AFR 35-7, paragraph 8-7 (September 15, 1981). If the serviceman is an Air National Guard (ANG) member, AF Form 131 applications are normally sent first to the consolidated base personnel office (CBPO). A personnel data system (PDS) input forwards the information to the Air Force Manpower Personnel Center (AFMPC) and the ARPC. The application and field personnel records are sent to the ARPC through the Adjutant General of the state where the serviceman is assigned. AFR 35-7, table 8-2, rule 2 (September 15, 1981). *See* AFR 35-7, paragraph 8-7 (September 15, 1981). The authority to approve applications for transfer or assignment to the retired reserve is vested in the Secretary of the Air Force and has been delegated to the ARPC. AFR 35-7, paragraph 8-9 (September 15, 1981). *See also* AFR 35-7, tables 8-3, 8-4 (September 15, 1981).

8. Any serviceman "who is or becomes a member of the Air Force Reserve in connection with retirement is also assigned to Retired Reserve. However, such member must ask to be transferred or assigned to the Retired Reserve when applying for voluntary retirement unless that action took place at some earlier date." AFR 35-7(C1) (July 30, 1982). Application procedures for transfer or assignment to the retired reserve are covered in AFR 35-7, chapter 8 (September 15, 1981); *see* note 7, *supra*. The record contains no reference to whether plaintiff made a request to be transferred to the retired reserve by filing AF Form 131.

application was approved by Headquarters, United States Air Force. He was effectively retired by the Secretary of the Air Force on September 1, 1984, in the grade of Senior Master Sergeant (SMSgt),[9] at which time he began to draw retirement pay.

As a consequence, plaintiff filed an application with the AFBCMR on or about February 12, 1986, seeking to correct his records to reflect a retirement date of April 15, 1983, the date of his involuntary discharge from the NEANG, rather than September 1, 1984. Relying principally on two advisory opinions, the first prepared by the Air Force Manpower and Personnel Center (AFMPC)[10] and the second by the ARPC, the AFBCMR denied plaintiff's application on April 8, 1987. The AFBCMR concluded, without a hearing, that the evidence submitted did not demonstrate the existence of probable error or injustice.[11] Subsequently, plaintiff filed a complaint in this court on July 20, 1988, for records correction and $21,845 in retirement back pay. He also requested costs pursuant to 28 U.S.C. § 2412. Plaintiff's complaint alleged that the AFBCMR acted arbitrarily, capriciously, and abused its discretion in reaching a decision which was against the record evidence. The matter is now before the court on defendant's alternative motions, filed on February 1, 1989, for either dismissal for lack of subject matter jurisdiction or summary judgment.

## Contentions of the Parties

### A. Defendant

The defendant contends first that this court lacks the requisite jurisdiction to rule on plaintiff's claim. Relying primarily upon *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), and *Spagnola v. Stockman,* 732 F.2d 908 (Fed.Cir.1984), plaintiff asserts that 28 U.S.C. § 1491 is a statute which confers jurisdiction on this court only when coupled with an independent substantive right, the violation of which would entitle a potential plaintiff to money damages. The defendant accordingly argues that there is no such substantive right under 10 U.S.C. § 8914,[12] the statutory retirement provision under which plaintiff must, according to the defendant, proceed as the basis for this suit. The defendant contends that § 8914 does not provide the required entitlement to money damages, pointing to statutory language which allegedly vests discretion in the Secretary of the Air Force to grant or deny retirement. Thus, because under § 8914 there can be no violation of a statute which *mandates* the payment of money, the defendant avers that there is a want of jurisdiction in the case at bar.

The defendant also asserts that the matter now before the court is a nonjusticiable controversy. This position is premised upon the argument that the duties assigned to the Secretary under § 8914 are military administrative matters purely discretionary in nature. As such, it is argued that there are no meaningful standards by which this court can undertake review of *any* § 8914 retirement decision. Thus, not only does the defendant contend that there is no jurisdiction because § 8914 does not require

---

**9.** "Members are relieved from assignment and duty on the last day of the month and are retired effective the first day of the following month...." *See* 5 U.S.C. § 8301(a) (1988); AFR 35–7(C1), paragraph 2–7 (July 30, 1982).

**10.** Both recommended denial of plaintiff's application to the AFBCMR. The AFMPC opinion, dated April 4, 1986, recited the nature of plaintiff's discharge, and the reasons for his decision to defer his retirement application in view of the procedures in federal district court. It concluded that no injustice occurred because plaintiff "elected to pursue his case to obtain a change in his discharge rather than apply for retirement." The ARPC on December 12, 1986, concurred with the AFMPC recommendation without further analysis.

**11.** Along with the aforementioned advisory opinions, the AFBCMR considered documentary evidence which included: plaintiff's February 12, 1986 application for correction; DD Form 149; plaintiff's master personnel records; and two letters from the Secretary of the Air Force, dated April 22 and December 31, 1986, which advised plaintiff of his right to respond to the advisory opinions rendered by the AFMPC and the ARPC.

**12.** 10 U.S.C. § 8914 (1988) provides in pertinent part: "... [a]n enlisted member of the Air Force who has at least 20, but less than 30, years of service ... *may, upon his request, be retired* ...." (Emphasis added).

the payment of money, it argues that a retirement decision under § 8914 is beyond review even if there is jurisdiction to review under another statute due to the aforementioned lack of standards.

Defendant contends, alternatively, that, if review is granted under § 8914 or any other appropriate statute, it is entitled to summary judgment as a matter of law because the AFBCMR decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. In support of this position, defendant notes that plaintiff never responded to the two separate advisory opinions submitted to the AFBCMR, one prepared by the ARPC and the other by the AFMPC, both of which recommended the denial of retirement pay. The defendant focuses its emphasis, however, upon the fact that plaintiff voluntarily chose not to apply for retirement status immediately upon his honorable, involuntary discharge in April 1983 and, further, his failure to apply for retirement status until July 2, 1984. In short, the defendant maintains that plaintiff's decision not to apply until one full year after the district court denied his petition for reinstatement in the NEANG on July 22, 1983, is probative as to the commencement date of his retirement benefits. Defendant therefore contends that, even if review is available here, there was neither error nor injustice committed by the AFBCMR which would be subject to correction by this court.

### B. Plaintiff

In response to the defendant's motion to dismiss for lack of subject matter jurisdiction, plaintiff contends that 10 U.S.C. § 8914 is not the sole statute upon which he relies for jurisdiction. Rather, plaintiff asserts that 10 U.S.C. § 1552[13] confers a separate substantive right when a correction board fails to correct an error or remove an injustice from a serviceman's record. Thus, plaintiff argues that § 1552, when coupled with 28 U.S.C. § 1491, provides the requisite jurisdiction.

Plaintiff also contends, in response to the defendant's alternative motion for summary judgment, that such motion is inappropriate in view of the arbitrary and capricious actions of the AFBCMR. In support of this assertion, plaintiff advances two vexatious injustices which he contends should have been corrected by the AFBCMR. First, plaintiff avers that if we accept the position asserted by the Air Force, any serviceman who wishes to challenge the legality of an involuntary discharge would, in effect, be forced to choose between two alternatives which were not intended as mutually exclusive remedies. Such a decision would be unjust according to plaintiff, because the serviceman who chooses to contest the propriety of an involuntary discharge in district court would be forever precluded from receiving deserved retirement benefits which should have commenced on the date of *involuntary* discharge if the applicant is not otherwise precluded from receiving them. Plaintiff therefore asserts that he should *not* be deprived of his right to receive retroactive retirement benefits on the date of his involuntary discharge merely because he did not succeed in his challenge to the legality of that discharge in federal district court. The attempted denial of this right, according to plaintiff, was a gross injustice which should have been corrected by the AFBCMR. To hold otherwise would, in effect, condone the NEANG's effort to deprive him of either the right to receive benefits to which he was clearly entitled, or the right to contest his involuntary discharge in the federal court system. In other words, the assertion of either right cannot be conditioned on the relinquishment of the other.

Additionally, plaintiff asserts that the defendant's *sua sponte* revocation of his retired reserve status in the NARS on November 7, 1983, was also an injustice sub-

---

13. 10 U.S.C. § 1552 (1988) provides in pertinent part:
   (a) The Secretary of a military department, ... acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary *to correct an error or remove an injustice* .... (emphasis added).

ject to AFBCMR correction. Plaintiff alleges that this grievous action by the Air Force was in retaliation for the legal challenge commenced by him in federal district court, which proceedings adduced embarrassing evidence regarding the use of racial epithets by prominent NEANG officers. As a final element in his charge of arbitrary and capricious behavior, plaintiff contends that the AFBCMR did not properly evaluate *all* of the operative factors relevant to correcting the alleged injustices in the record. Among those factors plaintiff includes his length and quality of service, his legal right to contest the involuntary discharge on the basis of racial discrimination, and the fact that he would have no remedy at all if he lost his suit because he would be deprived of retroactive retirement benefits. In plaintiff's view then, the cumulative impact of these alleged injustices are such that the AFBCMR's refusal to eliminate them through a record correction meets the test of arbitrary and capricious decisionmaking.

*Discussion*

In view of defendant's motion to dismiss, with an alternative motion for summary judgment, we must, therefore, decide first—whether 10 U.S.C. § 1552 provides an independent substantive right sufficient to confer jurisdiction on this court when coupled with 28 U.S.C. § 1491 and 10 U.S.C. § 8914. If such jurisdiction exists, and we find that it does in this case, we must then resolve the question—whether any actions by the NEANG or other military authorities constituted error or injustice that should have been corrected by the AFBCMR. If the answer to this latter inquiry is in the affirmative, we must further question—whether the failure of the AFBCMR to correct the alleged error or injustice is such that it may be termed arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulation. For the reasons stated herein, we find that the defendant's refusal to assign plaintiff to retired reserve status *as of April 15, 1983*, and to commence his retirement benefits on May 1, 1983, was a gross injustice verging on bad faith, partic-

ularly in view of the circumstances under which plaintiff contested his involuntary discharge here. Therefore, we hold that the AFBCMR acted in an arbitrary and capricious manner when it refused to order the correction of plaintiff's records.

### A. Jurisdiction

■ Plaintiff correctly points out that the present case is on all fours with the jurisdictional decisions expressed in several earlier cases in both this and the predecessor U.S. Court of Claims. Thus, it is clear beyond cavil that, pursuant to 10 U.S.C. § 1552, this court has jurisdiction to review the actions of military correction boards and service secretaries, such as the AFBCMR and the Secretary of the Air Force here. *E.g., Jones v. United States*, 7 Cl.Ct. 673, 677 (1983), *citing Armstrong v. United States*, 205 Ct.Cl. 754, 760–61 (1974); *Hertzog v. United States*, 167 Ct.Cl. 377, 383–85 (1964). *See Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979). Indeed, the fact that this court has jurisdiction to review actions of military correction boards is not subject to dispute, *Armstrong*, 205 Ct.Cl. at 761, particularly in those situations, such as here, where the action has monetary consequences. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813; *Jones*, 7 Cl.Ct. at 677.

Like the court in *Sanders* under somewhat similar circumstances, we are surprised by the defendant's contention that this court does not have the requisite subject matter jurisdiction to review a correction board decision under 10 U.S.C. § 1552. *See Sanders*, 219 Ct.Cl. at 298, 594 F.2d at 811. This court and our predecessor court have reviewed such decisions on innumerable occasions. In fact, this has been particularly true in cases such as here, where the predecessor court held that—"[it] has jurisdiction over those cases claiming lost pay that ... contest ... the failure of a correction board to remove a prejudicial injustice, as required by its statutory mandate." *Id.* at 297, 594 F.2d at 811. The defendant's assertion to the contrary is even more sur-

prising in view of 10 U.S.C. § 1552(c)[14] which relates to the authorization for the payment of claims consequent upon the correction of military records. *Id.*

It is patently clear that *Sanders* categorically rejects the position asserted by the defendant here, including its misplaced reliance on *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan,* the Supreme Court carefully distinguished between the situation before it, a Back Pay Act claim under 5 U.S.C. § 5596 which did not require the payment of compensation for the injury claimed therein, and those cases where a plaintiff claims that the government has improperly exacted or retained money. *See Sanders,* 219 Ct.Cl. at 296, 594 F.2d at 810. Plaintiff's situation here is identical to that expressly distinguished by *Testan* itself. Plaintiff here alleges that he was deprived of retirement benefits by a fundamental injustice that should have been corrected by the AFBCMR. Consequently, he is seeking relief in the form of improperly retained retirement pay totalling $21,845.00. Thus, pursuant to the analysis set forth in *Sanders,* we reject *Testan* as a basis for our holding and find that defendant's jurisdictional assertions are completely without merit and that this court, therefore, has jurisdiction to review the decision of the AFBCMR pursuant to 10 U.S.C. § 1552.

The remainder of the defendant's jurisdictional argument is, therefore, irrelevant. This is true inasmuch as it is clear that plaintiff does not seek review primarily under 10 U.S.C. § 8914, as the defendant contends. The plaintiff here contests and seeks review of the AFBCMR's refusal to correct the alleged injustices committed by the Air Force authorities pursuant to § 1552; he is not seeking direct review of a § 8914 Secretarial retirement decision. Consequently, because plaintiff is challenging whether the AFBCMR fulfilled its statutory mandate under 10 U.S.C. § 1552, it is under that section that plaintiff is seeking review in this court.

Finally, while defendant's contentions vis-a-vis the reviewability of a retirement decision pursuant to 10 U.S.C. § 8914 are moot for the purposes of our determination, we note that such a contention is suspect at the outset. Like the court in *Webb v. United States,* 15 Cl.Ct. 23, 25–26 (1988), we emphatically reject the argument that retirement issues raised under 10 U.S.C. § 8914 are beyond judicial scrutiny merely because that statute uses the term "may" rather than "shall." The mere use of discretionary language in the statute does not automatically preclude judicial review. Rather, there must be clear and convincing evidence of such a legislative intent. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 685 (1967). Thus, in this case it is the question of whether a retirement decision rendered by the Secretary under § 8914 is a military administrative matter so discretionary and lacking in meaningful review standards so as to be nonjusticiable, and thereby prevent direct judicial scrutiny, which we decline to rule on here. We emphasize, however, that there is a difference between that question and a determination of whether, while rendering a retirement decision under § 8914, the Secretary committed an injustice subject to correction by the AFBCMR pursuant to 10 U.S.C. § 1552.

**B. Arbitrary and Capricious**

■ Plaintiff has alleged that the AFBCMR's denial of his request for relief was arbitrary and capricious. Thus, having concluded that jurisdiction exists under 10 U.S.C. § 1552, we must address the paramount question—whether the AFBCMR erred when it refused to correct the alleged injustices in plaintiff's records. In order to recover for the failure to correct any alleged injustice, plaintiff must prove by clear and convincing evidence that

---

**14.** 10 U.S.C. § 1552 (1988) provides in pertinent part:

(c) The Secretary concerned may pay ... a claim for ... emoluments, or other pecuniary benefits, ... if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be....

the AFBCMR decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation. *See, e.g., Sanders,* 219 Ct.Cl. at 298, 301–02, 594 F.2d at 804, 811, 813. Thus, while the actions of the AFBCMR would normally be viewed as final, its decisions are, of course, subject to reversal in the event that any one of these standards is violated. *Id.,* 219 Ct.Cl. at 299, 594 F.2d at 812 (citation omitted). Such a showing by the plaintiff is a substantial burden, due perhaps to the strong but rebuttable presumption that military administrators discharge their duties correctly, lawfully, and in good faith. *Id.,* 219 Ct.Cl. at 302, 594 F.2d at 813. Nevertheless, the AFBCMR has not only the power, but an affirmative statutory duty, to correct errors and remove injustices in a serviceman's records pursuant to 10 U.S.C. § 1552(a).[15] *Yee v. United States,* 206 Ct.Cl. 388, 397, 512 F.2d 1383, 1387 (1975); *Duhon v. United States,* 198 Ct.Cl. 564, 568, 461 F.2d 1278, 1280 (1972). Thus, when a board such as the AFBCMR fails to correct an obvious and grievous injustice in the record, said board is necessarily acting in violation of its statutory mandate. Such a violation is considered arbitrary and capricious if it is contrary to the evidence. *Yee,* 206 Ct.Cl. at 397, 512 F.2d at 1387.

Therefore, the success of plaintiff's cross-motion is dependent upon whether there was in fact an error or injustice committed by the defendant which should have been corrected by the AFBCMR. While not pursuing the position that a legal error was committed in this case, plaintiff alleges two primary injustices by the defendant— the ARPC revocation of plaintiff's assignment to the NARS on November 7, 1983, and the defendant's steadfast refusal to place plaintiff in retirement status retroactive to the date of his discharge on April 15, 1983. In this context, "injustice," when not also legal error as contemplated under 10 U.S.C. § 1552(a), has been described most succinctly as *"treatment by the military authorities that shocks the sense of*

*justice." Reale v. United States,* 208 Ct.Cl. 1010, 1011, 529 F.2d 533, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976) (emphasis added). Under this definition, and on the total record here, we have no difficulty whatsoever in finding that the defendant, in the process of effecting an involuntary discharge and its refusal to grant retroactive retirement benefits to the date of the involuntary discharge, committed an injustice in both instances advanced by plaintiff. In fact, the defendant's conduct in this matter was sufficiently opprobrious that the record demonstrates the probability of bad faith. The obvious effect of these injustices undoubtedly required correction upon submission to the AFBCMR. Consequently, we hold, for the reasons discussed below, that the plaintiff has shown, by the required quantum of clear and convincing evidence, that the AFBCMR's failure to make the requested corrections was arbitrary and capricious.

The foregoing conclusion is clearly warranted, notwithstanding the admitted facts which clearly demonstrate—that plaintiff voluntarily chose not to file a retirement application at the time of his involuntary discharge from the NEANG on April 15, 1983; that plaintiff did not file his AF Form 1160 retirement application until July 21, 1984; and that plaintiff was not effectively retired by the Service until September 1, 1984. These facts, upon which the Service based its steadfast refusal to place plaintiff in retroactive retired status, create a hyper-technical timing issue, rather than an issue of a substantive right, which is not nearly as significant or critical as the defendant contends. While the submission of AF Form 1160 may be viewed as a notice mechanism, it has no *substantive* meaning in the retirement eligibility equation. That form clearly does not imply a prospective only condition to the receipt of retirement benefits. In other words, no statute or regulation employs the date on which an applicant requests retirement via AF Form 1160 as the benchmark date for the commencement of benefits.[16] *See* 10 U.S.C.

---

**15.** For the relevant text of § 1552(a) (1988), *see* note 13, *supra.*

**16.** We observe that, even if the regulations are construed to imply a prospective only grant of

§ 8914; AFR 35–7. This date has no bearing on the determination of when an applicant should be retired. Rather, the submission of AF Form 1160 simply provides an opportunity for the Service to determine if and when the applicant has satisfied all the retirement eligibility requirements. In short, we find that, where there is an involuntary discharge, as here, the date of retirement and commencement of benefits must be the date on which the eligibility criteria were satisfied, irrespective of the date on which the application was filed or approved.

In this sense then, the submission of an AF Form 1160 retirement application is a *procedural* requirement, whereby the applicant must provide the *substantive* information needed to *process* the application in order to determine the date on which the retirement eligibility requirements of AFR 35–7 have been satisfied. That date may not occur until some future time, or, *as in this case*, it may have occurred prior to the date on which the approved retirement order is itself issued. Indeed, the procedural nature of AF Form 1160 is evinced by its own statement of routine uses: "Used for establishing date of retirement, determining retired grade, preparing documents including retirement order, and evaluating information justifying waiver request." Thus, the data provided on AF Form 1160 by the applicant, the unit, and the consolidated base personnel office (CBPO) serves as the record upon which either the AFMPC or the Secretary of the Air Force must evaluate the retirement application. Approval is, of course, subject to the satisfaction of the retirement eligibility requirements of AFR 35–7—whether the applicant has rendered the required years of service; whether the applicant is in some way restricted; and whether any restrictions may be waived. If AF Form 1160 establishes entitlement to retirement on some date *prior* to submission or approval, there is no authority to prohibit either the AFMPC or

the Secretary from issuing a retroactive retirement order. In fact, we believe that a demonstration of compliance with all applicable retirement eligibility regulations at some date prior to the submission of AF Form 1160 would compel the issuance of a retroactive retirement order by the entities empowered to do so. Therefore, we hold, on the facts here, that the timing of the filing of AF Form 1160 is immaterial for the purposes of determining the date upon which an applicant should be effectively retired and benefits commenced. Said form is important only insofar as it relates those facts which enable the military authorities to calculate the date on which the appropriate retirement eligibility requirements, as set out in AFR 35–7, were or will be satisfied.

At the time plaintiff was involuntarily discharged from the NEANG on April 15, 1983, he was unquestionably eligible in all respects to be placed in retirement status and receive the concomitant benefits. He satisfied, at that time, every relevant eligibility requirement for voluntary retirement under regulations promulgated under the authority of § 8914. On that date he had rendered over 24 years of service for retirement, well in excess of the 20–year requirement. *See* AFR 35–7(C1), paragraph 3–1 (July 30, 1982). His eligibility was in no way restricted. *See* AFR 35–7(C1), paragraph 2–10 (July 30, 1982); AFR 35–7(C2), tables 2–1, 2–2 (December 22, 1983); AFR 35–7(C1), paragraph 3–1 (July 30, 1982); AFR 35–7(C2), table 3–1 (December 22, 1983). The conclusion that he was so entitled is supported further by two facts: First, the ARPC, by Reserve Order 0378, acknowledged plaintiff's eligibility for retired pay with respect to identification, years of service, grade, and the assignment from which he was being relieved, when it *voluntarily*, and without plaintiff's request, assigned plaintiff to the NARS on April 17, 1983.[17] This was done under the

retirement status, benefits, and pay, the Secretary of the Air Force has the authority to make exceptions to the requirement of Air Force retirement regulations such as the filing of an AF Form 1160 retirement application under the circumstances present here. AFR 35–7, paragraph 1–2 (September 15, 1981).

**17.** The ARPC made this determination with respect to its unilateral assignment to the NARS. Under 10 U.S.C. § 1331, a serviceman who

obvious understanding that he was *then* eligible for *immediate* retirement on that date. Secondly, and most importantly, the defendant has admitted that plaintiff would certainly have been effectively retired on April 15, 1983, had he filed the appropriate AF Form 1160 retirement application on or before that date. It is, therefore, established that plaintiff was eligible for retirement under § 8914 at the latest as of April 17, 1983. It is equally true then that neither the AFMPC nor the Secretary would have had the discretion to deny a retirement application if plaintiff had filed his AF Form 1160 retirement request on or about April 15, 1983. A denial in such circumstance would undoubtedly have constituted an injustice.

It is true that plaintiff's July 21, 1984 AF Form 1160 application does not contain the facts as they existed at the time plaintiff was discharged from the NEANG on April 15, 1983. This is so because plaintiff re-enlisted in the Air Force Reserve as a prelude to his application for retirement, and it is this information upon which the Secretary of the Air Force effectively retired plaintiff on September 1, 1984. In this context, it cannot be said that the Service should have or was required to issue a retroactive retirement order. However, the AFMPC learned of the facts and circumstances surrounding plaintiff's discharge on or before April 4, 1986, when it issued its advisory opinion to the AFBCMR. On the basis of that information, the AFMPC had the authority to rescind or amend the August 10, 1984 retirement order, Special Order AC–11741, on the basis of manifest error, mistake of law, or substantial new evidence.

AFR 35–7(C1), paragraph 2–8(b) (July 30, 1982).

We find that this information, along with the facts which were presented to the AFMPC indicating the reasons for plaintiff's actions, satisfies the aforementioned burden by which the AFMPC is empowered to amend plaintiff's retirement order. These facts render the plaintiff's decision not to file an AF Form 1160 retirement application immediately upon discharge on April 15, 1983, completely immaterial. By this time, April 4, 1986, both the AFMPC, and later the AFBCMR, were aware that the plaintiff's noncompliance with the procedural aspects of filing was prompted by a tactical decision; retirement would have put plaintiff in an inconsistent position vis-a-vis his discrimination suit in federal district court. Such an application would have placed him in an untenable position, inasmuch as a showing of irreparable harm would have been exceedingly difficult. It was for this reason alone, a reason well known to both the AFMPC and the AFBCMR, that plaintiff did not apply for the retirement status and benefits to which he was so clearly entitled to receive immediately upon his involuntary discharge.[18] Thus, not only may retirement be granted retroactive to the date on which plaintiff satisfied all the eligibility requirements for retirement, we do not view AF Form 1160 as an imperative here because the AFMPC and the AFBCMR had both the knowledge of all the relevant material facts that a promptly filed AF Form 1160 would have disclosed under normal circumstances, as well as the authority to issue an amendment for the purpose of granting the appropriate relief.

meets the requirements of that section is entitled to retirement benefits from that date, regardless of the date on which he applies for the retired pay to which he is entitled. *See, e.g., Hyde v. United States,* 134 Ct.Cl. 690, 139 F.Supp. 752 (1956). Thus, under that section, plaintiff was deemed eligible for assignment to retired reserve status in the NARS, AFR 35–7, paragraph 8–5(b)(2) (September 15, 1981), but he would not have been entitled to retroactive retirement pay upon application because he was not yet 60 years old.

**18.** Moreover, by submitting an AF Form 1160 application, plaintiff would have been forced to

agree, in effect, to the NEANG discharge action which he was contesting on the grounds of discrimination. One of the effects of a retirement application is that a serviceman cannot incur a voluntary service commitment that goes beyond the approved retirement date, AFR 35–7(C1), paragraph 3–2(d)(2) (July 30, 1982), and he becomes ineligible to re-enlist. AFR 35–7(C1), paragraph 3–2(d)(4) (July 30, 1982). *See also* Preapplication Checklist, AFR 35–7(C1), Attachment 8, "General Effects of Retirement Application," AFR 35–7, paragraph 3–2(d).

Our decision is further supported by principles equally applicable to this situation. The predecessor court has stated that where a serviceman's eligibility for retired pay is established at a date subsequent to release, but who has not received that retirement pay for a period after his release because it was fixed to commence at a later date, may recover accrued retirement pay for the intervening period. *See, Hiett v. United States,* 131 Ct.Cl. 585, 130 F.Supp. 338 (1955); *Ramsey v. United States,* 123 Ct.Cl. 504, 107 F.Supp. 957 (1952), *cert. denied,* 345 U.S. 994, 73 S.Ct. 1135, 97 L.Ed. 1401 (1952); *Hamrick v. United States,* 120 Ct.Cl. 17, 96 F.Supp. 940 (1951); *Womer v. United States,* 114 Ct.Cl. 415, 84 F.Supp. 651 (1949). In each of these disability retirement pay cases, each respective serviceman was retired with pay later than they should have been because of incorrect retiring board determinations that their incapacities were not service related. However, subsequent proceedings produced true and correct facts which established the right to disability retirement pay upon discharge. Thus, the gravamen of the principle enunciated in these cases again leads us to the conclusion that once all conditions precedent to the receipt of retirement pay have been satisfied, a serviceman is entitled to receive the retirement benefits which accrued during the time intervening between the erroneous determination and subsequent correction.

This principle thoroughly undermines the defendant's position. The revocation and denial of plaintiff's retirement status was not based on any erroneous entitlement determination by the Service, but rather, the defendant's actions are based on the more serious charge of an apparently vindictive desire to punish plaintiff for contesting his discharge on the grounds of allegedly discriminatory behavior by high ranking officials in the NEANG. In this context, it is clear that plaintiff satisfied all conditions precedent to the receipt of the retirement benefits earned through 24 years of faithful service to his country. By placing plaintiff in the NARS on its own accord, the Service implicitly recognized plaintiff's entitlement to retirement status and, by implication, retirement pay under § 8914. In effect, the Service waived the alleged requirement of a prompt AF Form 1160 application. To permit the Service to now insist upon the satisfaction of such a condition would be both unfair and unjust, particularly in view of plaintiff's length of service and the unique circumstances surrounding his release and the subsequent decision to contest the propriety of the discharge.

The foregoing conclusion is also supported by the equitable principles expressed by our predecessor court in *Caddington v. United States,* 147 Ct.Cl. 629, 178 F.Supp. 604 (1959). In that case, the plaintiff sought to recover the difference between the retirement pay of a lieutenant colonel and the retired pay of a full colonel, retroactive to the date of his retirement from the Army for a physical disability. Plaintiff premised his claim on an administrative policy, promulgated and distributed after his release from the Service, which provided for one grade promotions for officers who possessed certain qualifications. Plaintiff argued that, based on the foregoing policy, he was entitled to have his promotion dated incident to his release from active duty, irrespective of the hiatus between said release and the subsequent promulgation of the promotion policy. The defendant countered that under no circumstances could the promotion be dated any earlier than the promulgation date of the policy which triggered plaintiff's claim for promotion and incident increase in retirement pay.

Plaintiff's petition was granted on equitable grounds without regard to the promotion policy. The court concluded that the plaintiff should have been promoted to the rank of full colonel no later than the date of his release from active duty. *Id.,* 147 Ct.Cl. at 632, 178 F.Supp. at 607. Plaintiff had satisfied all the substantive criteria for promotion and had in fact been recommended for promotion prior to his release. However, he was not so promoted due to unfortunate circumstances which resulted in the loss of his records which contained evidence of the plaintiff's recom-

 

mended promotion. To put it another way, the process was never completed because the paperwork required under normal conditions had not been filed. The court recognized, however, that the plaintiff had satisfied all conditions precedent to promotion, but had been deprived of retirement benefits due to a peculiar set of facts. *Id.*, 147 Ct.Cl. at 633–34, 178 F.Supp. at 607.

In that context, *Caddington* is indeed similar to the present case. The undisputed facts here indicate that plaintiff was both eligible and entitled to retirement benefits on April 15, 1983, and would have undoubtedly filed to receive them if it had not been for the circumstances which led him to believe that he had been discharged as a result of a discriminatory motive by the NEANG. That he would have received these benefits has been expressly acknowledged by the defendant, both by word and by action. To acknowledge plaintiff's entitlement to retirement and then deprive him of that right cannot truly be viewed as anything less than an obvious injustice. The AFBCMR's subsequent refusal to order the correction indicates a failure to grasp the fundamental nature of the harm here and the need for a remedy. In this manner, the AFBCMR completely failed to fulfill its two-fold statutory duty to evaluate the injustice and to take such corrective action as would have fully erased the injustices present in this case. *Id.*, 147 Ct.Cl. at 632, 634, 178 F.Supp. at 606, 607.

Our decision is thus influenced by, and in accord with, certain principles cited in *Caddington* and applicable here. *Id.*, 147 Ct.Cl. at 634, 178 F.Supp. at 607. Consequently, we hold that the AFBCMR's refusal to correct the records here in issue to reflect a retirement date of April 15, 1983, and the commencement of benefits as of May 1, 1983, was indeed arbitrary and capricious.

**19.** Plaintiff can be retired only on the first day of the month following release from active duty. *See* AFR 35–7(C1), paragraph 2–7 (July 30, 1982), *supra*, note 9.

*Conclusion*

Defendant's alternative motions to dismiss and for summary judgment are hereby DENIED. Plaintiff's cross-motion for summary judgment is hereby GRANTED. Defendant shall correct plaintiff's records to show that he effectively retired, with retirement benefits commencing, on May 1, 1983.[19] Defendant shall pay to plaintiff retirement back pay in the amount of $21,-845.00. The Clerk shall enter judgment accordingly. Plaintiff's request for costs pursuant to 28 U.S.C. § 2412 is DENIED.[20]

IT IS SO ORDERED.

**20.** The court will entertain a proper application for attorney fees and expenses on motion by plaintiff. *See* RUSCC 81(e).