Ward W. CADDINGTON

v.

UNITED STATES.

No. 408–57.

United States Court of Claims.
Dec. 2, 1959.

James M. McCullough, Washington, D. C., for plaintiff. Leo J. McCullough, Washington, D. C., and Edwin L. Bright, Bethesda, Md., were on the brief.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

Plaintiff seeks to recover the difference between 75 percent of the pay of a lieutenant colonel with over 24 years of service, which he has been receiving, and 75 percent of the pay of a colonel with over 24 years of service, to which he claims he is entitled, from September 17, 1945, the date of his retirement from the Army for physical disability. There is no dispute as to any material fact.

After 20 years of service in the Maryland National Guard and the National Guard of the United States, plaintiff was ordered into Federal service early in 1941 in the grade of captain, National Guard of the United States. During 1941, he was appointed major, National Guard of the United States, and on September 4, 1942, he was appointed lieutenant colonel, Army of the United States. In August 1944, plaintiff was hospitalized following a combat injury,

and on June 26, 1945, he was found permanently unfit for further military service by reason of physical disability. He was retired on September 17, 1945, in the grade of lieutenant colonel, with 40 percent disability. He has received retired pay from that date at the rate of 75 percent of the pay of a lieutenant colonel with over 24 years of service as provided by statute.[1]

By TWX message dated December 13, 1945, the Adjutant General of the Army announced an administrative policy (hereinafter called "the Terminal Leave Promotion Policy" or "the Policy") which provided, in substance, for one-grade promotions for officers who possessed certain qualifications.

On March 1, 1956, the plaintiff applied to the Army Board for the Correction of Military Records, requesting that his records be corrected to reflect "promotion to full colonel under terminal leave promotion policy which was established Dec. 13, '45 if not otherwise eligible." In the application, he stated that he had been recommended for promotion to full colonel while still on active duty but that the promotion had never actually been made because of his injury and hospitalization and certain administrative errors. As a result of this application, a hearing was held at which plaintiff and his counsel were present. The Board made certain findings, conclusions, and recommendations based on the evidence presented to it.

The Board found that plaintiff had been in grade as a lieutenant colonel, Army of the United States for 36 months and that during such period his efficiency index exceeded 40. It found that the Terminal Leave Promotion Policy entitled officers with those qualifications to promotion to full colonel "incident to their relief from active duty." The Board concluded that plaintiff was eligible for promotion to colonel, Army of the United States under the Policy and that his failure to receive such promotion was in error and unjust. It recom-

1. R.S. § 1274, 10 U.S.C. 971 (1946 Ed.), now 10 U.S.C. § 3991.

mended correction of all plaintiff's records to reflect the promotion, effective December 13, 1945, "provided, that the Department of the Army pay no money as a result of this correction of the record." The Secretary of the Army adopted this recommendation, including the prohibition against paying out any money, and ordered that the corrections be made.

It is plaintiff's position that he is entitled to have his promotion dated incident to his release from active duty irrespective of the hiatus between the release and the promulgation of the promotion policy. Defendant urges with equal vigor that under no interpretation of the administrative policy could the promotion be dated earlier than December 13, 1945, and that the Secretary's action has provided plaintiff with every relief to which he is due. However, we do not believe, in view of the facts revealed by the pleadings and briefs, that it is necessary to decide the issue solely on the question of whether plaintiff's recovery is dependent upon the promotion policy dated December 13, 1945. That he should be granted this relief regardless of the existence of that policy is strongly supported by the admitted facts of record.

■ The Legislative Reorganization Act of 1946, 60 Stat. 812, 837,[2] includes provision for the Secretary of each armed force to correct records of his department where, in his judgment, it is necessary to correct an error or to remove an injustice. He is authorized to act through boards of civilian officers in this task. The act is remedial in nature. We believe that this imposes on the Secretary the twofold duty to properly evaluate the nature of any error or injustice and, in addition, to take such corrective action as will appropriately and fully erase such error or compensate such injustice.

■ From the facts contained in plaintiff's service records and the uncontroverted testimony before the Correction Board, we find that plaintiff should have been promoted to the rank of colonel no later than the date of his release from active duty. In fact, he undoubtedly would have been promoted but for an unfortunate loss of records while he was serving in the South Sea Islands of the Pacific. The plaintiff had an unusually good record. Prior to his being wounded, all of his ratings had been either superior or excellent. He alleges in paragraph 3 of his petition that he was recommended for promotion to colonel on his record while he was still at Guam and before he was wounded in combat on one of the other islands.

It is true that in his appearances before the Correction Board the plaintiff voluntarily admitted he had not actually seen the recommendation but testified he was advised of the fact that the recommendation had been made; that he was later sent to Guadalcanal where he received his combat injury; that he was sent on the hospital ship to the island Bonitka, which was at that time being evacuated; that he was flown to one or two other places and finally evacuated to New Caledonia; that somewhere in the process his military records, including X-rays and other medical examinations, were completely lost; that the X-ray pictures were again taken at the Caledonia General Hospital, but the other records were never found.

While the Department was never able to find the record of the recommended promotion, it offered no evidence whatever to combat the statements of plaintiff. Apparently the Board for the Correction of Military Records accepted these statements as true. Apparently, on that basis the Board found that the failure to promote the plaintiff to colonel was "in error and unjust."

We have not the slightest doubt that the plaintiff would have received his promotion to colonel long before and certainly not later than his actual discharge on September 17, 1945, but for the unfortunate circumstances which we have mentioned and which are undisputed.

2. Now 10 U.S.C. § 1552.

Not only had he long experience as an officer, but he had been on active duty as a field grade officer since before the entry of the United States into World War II. During that period and up to the date of his release from active duty his efficiency ratings were never other than excellent or superior. He had commanded his unit's combat team on a number of occasions and he had discharged this duty in commendable fashion. Among plaintiff's decorations is the Combat Infantryman's Badge.

Following his combat injury, he was evacuated by hospital ship and it was only after a period of island hopping that he and his comrades settled down to any intense sort of hospitalization on New Caledonia. Not surprisingly, during his evacuation, his military records, as well as his medical records and X-rays, were lost. Plaintiff ultimately passed almost 14 months in one Army hospital or another.

That plaintiff had been deprived of a very real reward which he had earned was recognized by the Correction Board. It could not fail to believe that the facts were as had been related to it. And its action in recommending the promotion to colonel reflects an intention to make plaintiff whole. The fact that it attempted to do so through so illusory and imperfect a means indicates a failure to grasp the real wrong and the real remedy.

To acknowledge plaintiff's right to a promotion and at the same time to deprive him of one of the principal benefits of the promotion cannot truly be viewed as such action as would remove an injustice. We think that to confer on plaintiff a fitting recognition of the reward earned by him during months of valiant service, more than a promotion in name only is required. An action which is designed to remove an injustice or correct an error, as this one must have been under the statutory enactments, should include every essential benefit. The Secretary can only discharge the duty imposed on him by the Legislative Re-organization Act of 1946 by effectively expunging those errors and injustices to which his attention is directed.

We feel that the Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.

We can reach no reasonable conclusion other than all of the elements of promotion were present and that viewing the record as a whole the plaintiff should be treated as having, in effect, received an actual promotion to colonel before his retirement. The record leaves no doubt of this fact. By every principle of equity and fair dealing we know anything about, either from reading or experience, plaintiff is entitled to the benefits of a record that is only slightly incomplete, due wholly to circumstances that were no fault of his own.

There are certain principles of equity that through long usage have grown into maxims. These include "equity regards that as done which ought to be done;" "equity will not suffer a wrong to be without a remedy;" "equity regards substance rather than form;" "equity delights to do justice and not by halves."

We believe that plaintiff's case falls within each of these maxims. These maxims, founded in justice and based on human experience, are among the proud traditions of Anglo-Saxon jurisprudence.

We believe that the Board for the Correction of Military Records and the Secretary who approved the findings reached a conclusion that falls short of complete justice. This is not to say that there was any intention to deny plaintiff any of his rights but the effect was just the same.

We hold, therefore, on the facts admitted by the briefs and pleadings, that plaintiff ought to have been promoted to full colonel during his tour of active duty and under no circumstances later than September 17, 1945, the date of his release from active duty. This is not accomplished by simply pinning a badge

on the plaintiff without giving him the rights that ordinarily flow from such a promotion.

Under the statute plaintiff's actual grade of colonel as of the date of his retirement would normally entitle him to retired pay based on a percentage of the pay of a colonel from that date and he should be entitled to recover any difference between that amount and the amount of the retired pay which he has been receiving. However, in view of the state of the record and the findings of the Board which remove any question of his rank from December 13, 1945, we find that the difference in pay should be calculated from the latter date.

Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. The amount of the judgment will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

LITTLETON, Judge (Retired), and LARAMORE and WHITAKER, Judges, concur.