**Michael STRICKLAND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1390C.

United States Court of Federal Claims.

Oct. 31, 2006.

John B. Wells, Slidell, Louisiana, counsel for Plaintiff.

Gregory T. Jaeger, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., Counsel for Defendant, with whom were Assistant Attorney General Peter D. Keisler, Director David M. Cohen, Assistant Director Franklin E. White, Jr., and LT Marc Rosen, JAGC, Of Counsel.

### MEMORANDUM OPINION AND FINAL ORDER ON REMAND AND DAMAGES.

BRADEN, Judge.

On July 30, 2004, the court issued a Memorandum Opinion and Final Judgment holding that the Assistant Secretary of the Navy violated 10 U.S.C. § 1552(a)(1), by rejecting a Final Opinion of the Board for Correction of Naval Records ("BCNR"), recommending correction of Plaintiff's record and three months of constructive service, so Plaintiff could qualify for retirement. *See Strickland v. United States*, 61 Fed.Cl. 443, 452–53 (2004) (*"Strickland I"*); *see also Strickland v. United States*, 61 Fed.Cl. 689, 691–92 (2004) (*"Strickland II"*) (denying Defendant's Motion for Reconsideration).

On September 16, 2005, the United States Court of Appeals for the Federal Circuit reversed, holding that "the Assistant Secretary's decision to overrule the [BCNR's] recommendation was within the power granted to the Secretary [of the Navy, and by delegation to the Assistant Secretary] by Congress in 10 U.S.C. § 1552(a)(1), as properly interpreted." *Strickland v. United States*, 423 F.3d 1335, 1343 (Fed.Cir.2005), *reh'g en banc denied* (Fed.Cir. Dec. 1, 2005) (*"Strickland III"*). The case was then remanded for the court "to determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to law." *Id.*

On remand, the court determined in a July 8, 2006 Memorandum Opinion and Final Order, that since the Department of Defense Directive ("DODDIR") 1332.14 and Secretary of the Navy Instruction ("SECNAVINST") 1910.4B, take precedence over the Military Personnel Manual ("MILPERSMAN") 1910–144, 1910–514, and 1910–518, when there is a conflict, the Administrative Discharge Board ("ABD")'s reliance on MIL-

PERSMAN fundamentally changed and lowered the evidentiary burden of proof that must be satisfied to justify involuntary separation, as a result of a civilian conviction. *See Strickland v. United States,* 69 Fed.Cl. 684, 705–13 (2006) (*"Strickland IV"*). The court determined that this clear violation of military regulation was "plain legal error" that substantially affected the ultimate decision of the Assistant Secretary to involuntarily separate Plaintiff and was not harmless error. *See Strickland IV,* 69 Fed.Cl. at 709 ("The Secretary is obligated not only to properly determine the nature of any error or injustice, but also to take such corrective action as will appropriately and fully erase such error or compensate such injustice.") (quoting *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004) (quoting *Caddington v. United States,* 147 Ct.Cl. 629, 632, 178 F.Supp. 604 (1959))). Accordingly, Defendant's Motion for Judgment on the Administrative Record was denied and Plaintiff's Cross–Motion was granted. The court requested the parties to determine the amount of back pay and retirement benefits, due plaintiff. *Id.* at 712.

After the Court issued its July 8, 2006 Memorandum Opinion and Final Order, the court was advised that sometime during these proceedings, Plaintiff became employed by the United States Navy's Military Sealift Command,[1] placing in further doubt the decision of the Assistant Secretary for Manpower and Reserve Affairs to discharge Plaintiff in the face of a strong recommendation from the BCNR to the contrary.

On October 5, 2006, the parties filed a Joint Stipulation regarding damages, while reserving their respective rights to consider an appeal. *See* J. Stip. On October 16, 2006, Defendant filed an Exhibit, in support, detailing the damages computation. *See* J. Stip. Ex. The Joint Stipulation states that the total amount of damages due Plaintiff, pursuant to the Court's February 8, 2006 Memorandum Opinion and Final Order, is $117,933.03. *See* J. Stip. at 1; J. Stip. Ex. at 2. The parties also have agreed that this amount is subject to deductions for federal income, social security, and medicare taxes in the amount of $22,835.72. *See* J. Stip. Ex. at 2. As a result, the parties agree that Plaintiff should receive payment of $95,097.31, and the court so orders. *See* J. Stip. at 1; J. Stip. Ex. at 2.

In the record of these proceedings, Plaintiff was described by his former Commanding Officer as "one of the finest Range Masters in the Navy." *Strickland I,* 61 Fed.Cl. at 445. Upon entry of this Memorandum Opinion and Final Order the court has been informed that Plaintiff will be transferred to the elite Fleet Reserve[2] to continue his valued service to the United States.

Therefore, pursuant to the court's authority under 28 U.S.C. § 1491(a)(2) to correct military records as "incident of and collateral to" an award of a money judgment, the court also orders that:

1.  Plaintiff's Naval Record be corrected to show that Plaintiff was not discharged on February 3, 2000, but con-

---

1.  The Military Sealift Command ("MSC") provides "ocean transportation of equipment, fuel, supplies and ammunition to sustain U.S. forces worldwide during peacetime and in war for as long as operational requirements dictate. During a war, more than 95 percent of all equipment and supplies needed to sustain the U.S. military is carried by sea.... Recent crises have reinforced the vital role of the MSC as a major contributor in the execution of U.S. national strategy. The [C]ommand operates ships that provide combat logistics support to U.S. Navy ships at sea; special mission support to U.S. government agencies; prepositioning of U.S. military supplies and equipment at sea; and ocean transportation of Department of Defense cargo[.] ... MSC has more than 10,800 employees worldwide, approximately 80 percent of which serve at sea. Approximately 5,100 employees are federal

civil service, 660 are military personnel; and another 4,600 are employed by MSC contractors." Military Sealift Command Media Center, Backgrounder, http://www.msc.navy.mil/mediacenter (last visited on Oct. 24, 2006).

2.  The Fleet Reserve was established to provide the Government with "a trained body of men subject to recall to active duty when needed." *Murphy v. United States,* 165 Ct.Cl. 156 (1964) (citing *United States v. Fenno,* 167 F.2d 593, 595 (2d Cir.1948)). Enlisted members of the regular Navy or Naval Reserve are eligible for transfer to the Fleet Reserve upon the completion of at least 20 years of active service in the armed forces. *See* 10 U.S.C. § 6330(b). While serving in the Fleet Reserve, a member may be ordered to active duty. *See* 10 U.S.C. § 6485.

tinued to serve without interruption on active duty.

2. Plaintiff's record be further corrected to show that on March 11, 1998, Plaintiff extended his service until the date he first became eligible for retirement, and that on such date, he was transferred to the Fleet Reserve in the rate of GMG1.[3]

3. Any material or entries inconsistent with or relating to the court's judgment be corrected, removed, or completely expunged from Plaintiff's record and that no such entries or material be added to the record at any time in the future.

4. Any material directed to be removed from Plaintiff's Naval Record be delivered to the BCNR, for retention in a confidential file maintained for such purpose, with no cross reference being made a part of Plaintiff's Naval Record.

The Clerk of the United States Court of Federal Claims is DIRECTED to enter judgment in accordance with this Memorandum Opinion and Final Order.

**IT IS SO ORDERED.**

---

**3.** Ordinarily, "[b]ecause no one has a right to enlist or reenlist in the armed forces unless specially granted one, an enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged." *Dodson v. United States,* 988 F.2d 1199, 1208 (Fed.Cir.1993). In this case, however, the Plaintiff was serving in an active duty capacity when he was improperly separated and therefore would have been entitled to continue in service. *See* 10 U.S.C. § 1176(a) ("A regular enlisted member who is selected to be involuntarily separated, or whose term of enlistment expires and who is denied reenlistment, and who on the date on which the member is to be discharged is within two years of . . . of qualifying for transfer to the Fleet Reserve or Fleet Marine Corps Reserve under section 6330 of this title, shall be retained on active duty until the member is qualified for retirement or transfer to the Fleet Reserve or Fleet Marine Corps Reserve, as the case may be, unless the member is sooner retired or discharged under any other provision of law.").