Anthony J. BROOKS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–2470C.

United States Court of Federal Claims.

July 6, 2009.

Davidson, Director, Bryant G. Snee, Assistant Director, all of Washington, D.C., for the defendant. Lisa M. Flynn, Office of the General Counsel, Department of Health and Human Services, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff Anthony J. Brooks seeks back pay, the correction of his records to indicate that he held the position of Chief Pharmacist Officer of the United States Public Health Service ("PHS"), and increased retirement pay resulting from this correction. After competing for this promotion and having been selected for the position by the Surgeon General, he received a Letter of Reprimand before the date he was to assume the office, and was denied the position. Before plaintiff had succeeded in having the Letter of Reprimand rescinded, competition for the position was reopened, and he was not selected a second time. The Secretary of Health and Human Services, acting through the Board for Correction of PHS Commissioned Corps Records ("BCCCR" or "the Board"), denied plaintiff's requested relief. Both parties have moved for judgment on the administrative record under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). As is explained in detail below, because the official with the discretion to remove individuals from the position in question rescinded the selection of plaintiff before the effective date of his appointment, plaintiff is not legally entitled to the relief he seeks. Accordingly, the government's motion for judgment is **GRANTED**, and the plaintiff's motion for judgment is **DENIED**.

## I. BACKGROUND

Eugene R. Fidell, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., for the plaintiff. Matthew S. Freedus, Feldesman Tucker Leifer Fidell LLP, Washington, D.C., of counsel.

Richard P. Schroeder, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E.

### A. The Application to the Correction Board and the Letter of Reprimand

This case concerns a promotion decision within PHS, a sub-agency of the Department of Health and Human Services ("HHS"). The HHS Assistant Secretary for Health is the Service's chief administrator. 42 U.S.C. § 202 (2000). The Service includes the Office of the Surgeon General and the Commissioned Corps of uniformed officers, whom the

President appoints with the advice and consent of the Senate. *Id.* §§ 203–204. By law, Commissioned Corps officers are entitled to pay based on their assigned pay grades. *See* 37 U.S.C. §§ 101(3), 204(a)(1); 42 U.S.C. § 210(a)(1). They are also entitled to a number of benefits available to Army officers, *see* 42 U.S.C. § 213a, including recourse to a board for correction of records. 42 U.S.C. § 213a(a)(12).

Captain Anthony J. Brooks joined the Commissioned Corps in 1979.[1] *Brooks v. United States,* 65 Fed.Cl. 135, 137 (2005). He retired from the Corps, effective March 1, 2007. Def.'s Cross–Mot. for J. upon Admin. Rec. & Resp. to Pl.'s Mot. ("Def.'s Cross–Mot.") at 9; Pl.'s Mot. for J. on Admin. Rec. ("Pl.'s Mot.") at 11. On July 1, 1999, Capt. Brooks submitted an application to the BCCCR, seeking to have his promotion to the temporary 0–6 grade backdated by nine months. Admin. Rec. ("AR") at 87–90. Plaintiff contended that a recently-adopted criterion for promotion that evaluated candidates by ranking them in quartiles at an agency-level unjustly favored less qualified candidates from smaller agencies. *Id.* at 89; *see Brooks,* 65 Fed.Cl. at 138 n. 4. To support his claim, he gave the example of a former subordinate who was transferred to another agency because of poor performance, yet was promoted over him by being the only candidate from—and hence in the top cohort of—her new agency. AR at 89–90. His application identified this officer by her PHS number and her initials, and contained as attachments three records from her personnel file—from which her name (but not her initials) was blackened out, and one of which contained both her PHS and social security numbers. *See* Pl.'s App. to Cross–Mot. for Sum. J. ("Pl.'s App.") at 3, 8–11.[2]

The Executive Secretary of the BCCCR referred Capt. Brooks's application to the Division of Commissioned Personnel ("DCP"), and received guidance in Advisory Opinions that were submitted on December 18, 1999 and April 2, 2000. *See* AR at 192–204. A few weeks after the second opinion was sent, the DCP's Chief Legal Advisor, Capt. Denise Canton, received an e-mail from Deborah A. Harris of the Office of the General Counsel of HHS. *Id.* at 5. Apparently, Capt. Canton had inquired whether Capt. Brooks had violated the Privacy Act, 5 U.S.C. § 552a, by including the former subordinate's records with his application to the BCCCR. The response from Ms. Harris was that "after some thought, we are certain that this disclosure was a violation of the Privacy Act." AR at 5. In a revised Advisory Opinion, sent July 31, 2000, the DCP informed the BCCCR that Capt. Brooks "may have violated the Privacy Act," and thus had "unclean hands," precluding equitable relief. Pl.'s App. at 90.[3] The cover letter to this report "call[ed] the Board's attention to the fact that it appears that [Capt. Brooks] submitted documents that are protected by the Privacy Act from another officer's Official Personnel Folder," and noted that "DCP finds that the release of and the access to these records protected by the Privacy Act may constitute misconduct." *Id.* at 86. The letter concluded: "DCP retains the authority to take disciplinary action should there be a finding of sufficient evidence to substantiate an allegation of a Privacy Act Violation." *Id.*

While his case was pending before the BCCCR, in early 2000 Capt. Brooks was nominated by the director of his institute to be a candidate for the position of Chief Pharmacist Officer ("CPO"), one of eight PHS Chief Professional Officer positions expressly authorized by statute. *Brooks,* 65 Fed.Cl. at

---

1. A fuller recitation of the facts alleged in Capt. Brooks's complaint is set out in the Court's earlier opinion in this case. *See Brooks v. United States,* 65 Fed.Cl. 135, 136–39 (2005).

2. The identifiers were redacted from the copy of the application in the administrative record, *see* AR at 89, and the other officer's records were omitted. Two of those records appear elsewhere in the administrative record. *See* AR at 270–72. The other officer's social security number was

also redacted from the copy of the attachment included in the appendix to plaintiff's earlier dispositive motion. *See* Pl.'s App. at 10.

3. Although this discussion in the July 2000 Advisory Report bears directly on the question of Capt. Brooks's potential misconduct, defendant curiously redacted it from the administrative record. *Compare* Pl.'s App. at 86, 89–91 *with* AR at 157, 160–61.

137; AR at 48. In the Spring of 2000, Capt. Brooks was one of five candidates recommended to the Surgeon General by the CPO Nomination Board. *See* AR at 48, 254, 284; *Brooks*, 65 Fed.Cl. at 137. On July 7, 2000, Capt. Brooks was interviewed for the CPO position by Deputy Surgeon General Kenneth Moritsugu. *See* AR at 284, 385. In mid-August 2000, plaintiff apparently first learned of DCP's Privacy Act concerns. AR at 110; *Brooks*, 65 Fed.Cl. at 138. On September 17, 2000, Surgeon General David Satcher interviewed the plaintiff for the CPO position. AR at 284.

The next day the Surgeon General issued a memorandum to the Director of the DCP, with a copy to Capt. Brooks, selecting the plaintiff as the CPO to serve a term of four years beginning October 1, 2000. AR at 63. On September 22, the Acting Chief of Staff of the Surgeon General's office, Richard G. Wyatt, contacted Capt. Brooks to inform him that the "memorandum had been sent in error," citing "a problem in processing the action." *Brooks*, 65 Fed.Cl. at 137; AR at 55. Earlier that day, the Deputy Surgeon General's office requested from DCP the records of both the plaintiff and an individual selected for another position, "for final review." AR at 384. The requested information was "to include the adverse action files and any administrative issues/actions files," and DCP was instructed that "no action placing" the two individuals in Chief Professional Officer positions may "take place" prior to the completion of the review of their records. *Id.* The following Monday, September 25, 2000, Capt. Canton met with the Deputy Surgeon General and other officials "to discuss the allegation of a violation of the Privacy Act" by Capt. Brooks. AR at 383. Captain Canton noted that plaintiff had "not responded to the charges," and recorded that "[t]he matter [was] of some urgency as the Surgeon General and Secretary have a need to determine the impact of alleged Privacy Act Violations on other official actions." *Id.*

Three days later, on September 28, 2000, the DCP Director, Michael Davidson, issued to Capt. Brooks a Letter of Reprimand ("LOR") for "misconduct," for having "disclosed documents from an officer's record without authorization." AR at 107. It was found that Capt. Brooks's submission of his former subordinate's records as part of his BCCCR application was "a violation of the Privacy Act and evidence of behavior of a dishonorable nature which reflects discredit upon both [Capt. Brooks] and the PHS." *Id.* On September 29, 2000, the Surgeon General sent a memorandum to the Director of DCP, which read: "Pursuant to recent discoveries of misconduct by [Capt.] Anthony J. Brooks ... I rescind his selection to serve as Chief Pharmacist Officer of the Public Health Service." AR at 378. The existence of this memorandum was apparently not made known to Capt. Brooks until September 2005, *see* Pl.'s Reply to Def.'s Resp. to Mot. for J. on Admin. Rec. & Resp. to Def.'s Cross–Mot. ("Pl.'s Reply") at 2; AR 317, and it was not mentioned in the original BCCCR report. *See* AR at 276–87.

According to Capt. Brooks, before submitting his application to the BCCCR he called the Board's Executive Secretary to discuss his contemplated attachments, and was informed that his submissions would be confidential and themselves protected under the Privacy Act. *See* AR at 110; Pl.'s App. at 112. He included this explanation in a grievance challenging the LOR, *see* Pl.'s App. at 112, but Rear Adm. Davidson affirmed his own decision to issue the LOR. *Id.* at 114–16; *Brooks*, 65 Fed.Cl. at 138.

The plaintiff then appealed Adm. Davidson's decision to Mr. Steven C. Seward, Special Initiatives Manager and Acting Deputy Director of Program Support, Human Resources Service. *Brooks*, 65 Fed.Cl. at 138; Pl.'s App. at 130–33. On January 9, 2001 Mr. Seward granted the plaintiff's appeal and rescinded the LOR, stating:

> I have reviewed your submission and find that at the time [the DCP Director] issued the letter of reprimand and subsequently denied your grievance, he had evidence that in fact supported his decision. However, new information has surfaced which raises questions as to the basis for the original decision. There is now substantial evidence supporting that the action you took with regard to another officer's rec-

ord in your appeal to the [BCCCR] was not a violation of the Privacy Act.

AR at 125. This "new information" was not identified. *Id.* Mister Seward ordered the LOR to be removed from plaintiff's personnel folder and other files. *Id.* On January 18, 2001, Rear Adm. Davidson issued a memorandum stating that the rescinded LOR "will be removed" from the personnel file, and instructing others to remove any copies from their files. AR at 124.

After the LOR was rescinded, on January 25, 2001 Capt. Brooks added to his BCCCR case the claim that the LOR prevented him from being promoted to the CPO position, and requested that his promotion to the 0–7 grade be "restore[d]" retroactive to October 1, 2000. AR at 106. But after the Surgeon General had rescinded his selection of Capt. Brooks, the CPO position was reopened for competition and the criteria were changed to allow more senior officers to be eligible. *See* AR at 59; *Brooks,* 65 Fed.Cl. at 139. A new CPO Nomination Board was convened on February 15, 2001, and ranked Capt. Brooks twelfth of seventeen candidates. AR at 286; *Brooks,* 65 Fed.Cl. at 139. In July 2001, a different officer was selected for the position. *See* AR at 60; *Brooks,* 65 Fed.Cl. at 139.

On June 19, 2002, the BCCCR issued its recommendations regarding Capt. Brooks's application for a correction of records. AR at 276–87. The BCCCR recommended against changing the date of Capt. Brooks's promotion to Temporary Grade 0–6, as his arguments "involved issues not within the purview of the Board." *Id.* at 283. Concerning plaintiff's selection for the CPO position, the BCCCR found:

> The LOR resulted in an error and an injustice. This was proven to be so since the LOR was rescinded through the grievance process. It stopped the selection process and issuance of the Personnel Order which may have identified CAPT Brooks as the Chief Pharmacist and his promotion to the flag grade 0–7.

AR at 286; *see Brooks,* 65 Fed.Cl. at 139. The Board recommended that the plaintiff be given special consideration for all 0–7 flag grade positions that would become available for the next three years. AR at 286–87.

The official delegated with the authority to act on behalf of the Secretary—Deputy Assistant Secretary for Program Support Mike Blank—reviewed the BCCCR's recommendations and disapproved the suggested relief on March 18, 2003. *Id.* at 288–89. He conceded that "an injustice may have occurred" when the Surgeon General's Office did not seek the HHS Secretary's approval of the plaintiff's selection, because the Surgeon General's decision "may have been related" to "the issuance of the letter of reprimand." *Id.* at 289. But even if that were the case, Mr. Blank concluded that Capt. Brooks would not be entitled to the relief that the BCCCR recommended because no record could be corrected under the circumstances—as he believed the position "required the Secretary's approval," of which "there was no guarantee." *Id.* In a letter dated March 19, 2003, the BCCCR notified Capt. Brooks of Mr. Blank's disapproval of the BCCCR's recommendations and dismissal of the application. *Id.* at 275. Seven months later the plaintiff filed his complaint with this Court. *Brooks,* 65 Fed.Cl. at 139.

## B. The Court's Previous Opinion

On April 18, 2005, the Court denied the government's motion to dismiss under RCFC 12(b)(6) and granted-in-part Capt. Brooks's motion for summary judgment under RCFC 56(a). *Brooks,* 65 Fed.Cl. at 136. The Court held that Dr. Satcher, as the Surgeon General, had the power to appoint Capt. Brooks to the CPO position because the Secretary had delegated this power to the Surgeon General. *Id.* at 141–43. The Court rejected defendant's argument that the special deference that courts must give to military promotion decisions applies to the PHS. *Id.* at 143–44. And the Court found that Capt. Brooks was not claiming that a discretionary decision was wrongly made, but rather that once discretion was exercised, he had been unlawfully deprived of an entitled promotion by the actions of the Surgeon General's subordinates. *Id.* at 144–45.

The Court held that though Capt. Brooks's appointment was effective because the Surgeon General had the power to appoint, any entitlement to the position or to back pay

would terminate once the Surgeon General lawfully exercised his removal power. *Id.* at 145–49. Based upon the appendix submitted by the plaintiff, prior to the filing of any administrative record, the Court could not determine whether the Surgeon General had exercised his (apparently unlimited) removal power. *Id.* at 148–49. But the Secretary's delegate committed a legal error when he rejected the BCCCR's recommendation, as he failed to recognize the Surgeon General's authority to appoint a CPO. *Brooks,* 65 Fed. Cl. at 150–51. The Court remanded the case back to the Secretary's delegate so that the BCCCR could obtain additional information concerning, among other things, whether the Surgeon General effectively revoked Capt. Brooks's appointment; and whether the LOR was the reason Secretarial approval of the appointment of plaintiff was never sought, the eligibility for the CPO position was broadened, and a new CPO Nomination Board was convened. *Brooks,* 65 Fed.Cl. at 152.

## C. The Remands to the BCCCR

On October 26, 2005 the Board, with an entirely different membership from that which considered Capt. Brooks's matter initially, *compare* AR at 14 *with* AR at 307, met to address the issues identified in the remand order. AR at 309–14. The BCCCR "noted" its members' belief that the specific questions "posed by the [Court] were beyond the authority granted to the Board," as the members thought the BCCCR was "not an investigative body." AR at 309; *see also id.* at 307–08. As the Court noted in a subsequent remand order, this attitude conflicted with the BCCCR's own procedures, *see* AR at 213 (§ I.2 of Personnel Instruction 1), 216 (§ K.2.b of same), and the specific information that was sought concerned matters previously raised, *see id.* at 286 (recommendation c), or investigated, *see id.* at 61–62, by the Board. *See* Order (Mar. 29, 2006), 2006 WL 5629142 at 2–3.

The Court's initial remand was intended to give the Secretary's delegate, acting through the BCCCR, the opportunity to determine what remedy, if any, should be provided Capt. Brooks, recognizing that the power to appoint a CPO rested with the Surgeon General. *See Brooks,* 65 Fed.Cl. at 151 (explaining that the Secretary's delegate "should have remanded the matter to the Board for additional consideration"). But although at the Board's request the office formerly known as the DCP, now renamed the Office of Commissioned Corps Operations ("OCCO"), gathered documents, *see* AR at 295–99, as well as information from several officials in the form of declarations made under penalty of perjury, *see id.* at 385–89, 394, 402–05, the BCCCR's approved response was cursory and incomplete. *See id.* at 307–11. The Board determined that the Surgeon General effectively revoked Capt. Brooks's appointment on September 29, 2000, when he "officially rescinded the Chief Pharmacist Officer selection." *Id.* at 310.[4] The September 29, 2000 document is the only specific item identified in any of the Board's initial responses on remand. *See id.* at 310–11. Concerning whether the LOR was the reason the Secretary was not asked to approve the appointment of Capt. Brooks as CPO, the BCCCR stated:

> Based on the limited information in the case file, it is the Board's contention that allegations of misconduct on the part of CAPT Brooks resulted in the issuance of the [LOR], which ultimately led to the Surgeon General's rescission of his selection as [CPO].

*Id.* at 310. The Board was "unable to provide a response" to the questions why a new CPO Nomination Board was convened, and whether the presence in his file of the September 18, 2000 memorandum selecting him for the CPO position unjustly prejudiced plaintiff's chance for selection during the second competition. *Id.* at 311.

On March 29, 2006, at the request of the parties, the Court stayed the case and remanded the matter a second time. Order (Mar. 29, 2006), 2006 WL 5629142; *see also* Joint Status Report (Feb. 1, 2006). The Court clarified that it had expected that the

---

**4.** The Board erroneously described the document rescinding the selection as "a letter to [Capt.] Brooks." AR at 310. The September 29, 2000 document was a memorandum addressed to the DCP Director. *Id.* at 378.

BCCCR, in response to the April 2005 opinion, "would obtain the additional information requested and, in light of the legal rulings of the Court, make a further recommendation to the Deputy Assistant." Order (Mar. 29, 2006), 2006 WL 5629142 at *1. A second remand was ordered so that the Secretary's delegate could decide the scope and impact of the "error and injustice" caused by the LOR and the appropriate corrective remedy. *Id.* at *3. Seven specific questions were listed for the BCCCR to address, several concerning whether errors and injustices resulted from actions that were based on either the LOR or the misconduct alleged in the LOR. *See id.* at *3–4.

On May 11, 2006, the BCCCR, with the approval of Deputy Assistant Secretary for Program Support J.P. VanLandingham, recommended "that no relief be gra[n]ted for failure to establish that a harmful error and injustice occurred." AR at 431.[5] Addressing whether the Surgeon General's decision to rescind the appointment of Capt. Brooks was an error and an injustice because it was based on the LOR, the Board determined:

> The timing of the Surgeon General's decision to rescind Capt. Brook[s's] selection for appointment to CPO certainly gives the impression that the [LOR] was the basis for the decision. If the Surgeon General's decision was based solely on the LOR, this would constitute a harmful error and an injustice. However, the Surgeon General's memorandum rescinding Capt. Brooks' appointment as CPO does not cite the LOR as the reason for rescinding the selection for appointment. Rather, the stated reason was 'Pursuant to recent discoveries of misconduct by CAPT Anthony J. Brooks....' Capt. Brooks was selected for appointment and then the selection was rescinded by the Surgeon General prior to the effective date with discovery of facts indicating poor judgment and potential misconduct by Capt. Brooks.

AR at 429.

In response to the question whether "the Surgeon General express[ed] any reason,

other than the misconduct alleged in the [LOR], for either rescinding the appointment ... or not seeking [the] Secretary's approval," the Board responded:

> The Surgeon General's memorandum does not cite the LOR as the reason for rescinding the selection for appointment. The LOR was issued for violation of the Privacy Act. On later review, Capt. Brook[s's] actions were found not to be in violation of the Privacy Act.

*Id.* Had it found the LOR to be the only reason that Capt. Brooks's appointment was rescinded, the Board would have recommended correcting his record to indicate that he was appointed CPO effective October 1, 2000. *Id.* If the 2001 CPO selection process were effectively the result of the LOR having blocked Capt. Brooks's assumption of the CPO position, the Board believed it would be an error and injustice for the plaintiff's records to reflect that his service was terminated by the appointment of a new CPO—but the BCCCR stressed that plaintiff "was never appointed as CPO and the record is inconclusive in establishing that the LOR was the sole reason that the Surgeon General rescinded his selection for appointment as CPO." AR at 430.

When asked whether "the record contain[ed] any evidence supporting a reason for the Secretary to disapprove selection of Capt. Brooks, other than the allegations in the [LOR]," the Board answered in the affirmative, relying on a statement made by Deputy Surgeon General Moritsugu that it characterized as having "clearly indicated that there were facts indicating poor judgment and potential misconduct that [led] to the Surgeon General rescinding his selection for appointment of Capt. Brooks as CPO." *Id.* The BCCCR's conclusion was that there was "insufficient evidence to definitively conclude either that the LOR was the sole reason for the Surgeon General's decision to rescind

5. The documents relating to the second remand were contained in Volume III of the Administrative Record, which was filed June 23, 2006. As these documents were not paginated, for the convenience of the Court the plaintiff included

them, numbered to pick up where the second volume of the Administrative Record left off, as an attachment to his motion for judgment on the administrative record.

Capt. Brook[s's] selection for appointment as CPO or that there were reasons other than the LOR that [led] to the decision." *Id.*

Initially, the Board voted 2–1 to recommend correcting the record to indicate that Capt. Brooks served as CPO from October 1, 2000 until the appointment of another CPO in 2001 or the date Capt. Brooks retired, if earlier. *Id.* The dissenting member reasoned, in part, that "since the Surgeon General had the authority to appoint the CPO without approval of the Department Secretary, he also had the authority to rescind the appointment, which he did prior to the effective date." *Id.* When the minutes of the Board meeting were circulated one member changed his vote, bringing the tally to 2–1 against recommending relief for Capt. Brooks. *Id.* The board member who changed his mind explained:

> It is now my opinion that Capt. Brooks not be compensated based upon the findings from the Board. If you review the questions and answers to me it points towards the fact that even though the timing of the letter of reprimand is questionable, there is no hard evidence that it was based upon the letter. Reviewing the sworn statement of RADM Moritsugu supports the fact that there were other reasons, not the letter of reprimand, for rescinding the selection. Also the fact that in the letter to Capt. Brooks it does not mention[ ] the letter of reprimand, but the stated reason was recent discoveries of misconduct. Also, it is my understanding that this position serves at the discretion of the Surgeon General and can be revoked at any time.

AR at 430; *see also id.* at 432.

### D. The Motions for Judgment on the Record

Plaintiff has moved for judgment on the administrative record, under RCFC 52.1. Captain Brooks argues that his appointment as CPO was unlawfully derailed as a result of the issuance of the LOR, and that the burden of proving that the LOR's issuance was a harmless error fell on the government. Pl.'s Mot. at 11–13 (citing *Engels v. United States,* 230 Ct.Cl. 465, 678 F.2d 173 (1982); *Frizelle v. Slater,* 111 F.3d 172, 179 (D.C.Cir.1997)).

Plaintiff contends that if the BCCCR could not definitively identify the reason the Surgeon General rescinded his appointment, this "failure is fatal to defendant's case, not plaintiff's." *Id.* at 13. Captain Brooks also argues that an award of back pay for less than the full four-year term of the CPO position would not satisfy the requirement that relief be both "thorough and fitting." *Id.* at 14–15 (citing, *inter alia, Caddington v. United States,* 147 Ct.Cl. 629, 634, 178 F.Supp. 604 (1959)). Finally, he contends, without any legal support for the proposition, that the Surgeon General's memorandum rescinding his appointment was "without effect until communicated to the appointee." *Id.* at 15 n. 6; *see also* Pl.'s Reply at 4; Tr. (Jan. 9, 2008) at 23 (plaintiff's counsel conceding: "There is no law, there is no regulation that I have found on this subject.").

The government filed a cross-motion for judgment on the administrative record, arguing that plaintiff has failed to demonstrate that the BCCCR's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Def.'s Cross–Mot. at 11 (citing *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998)). Defendant contends that Capt. Brooks's poor judgment in using his former subordinate's records as exhibits to his BCCCR application, regardless of whether this violated the Privacy Act, constitutes the "substantial evidence" to support the Board's denial of relief. *Id.* at 12–14. The government also argues that Capt. Brooks is not entitled to relief, as the Surgeon General rescinded the selection prior to the effective date, and plaintiff never served in the position. *Id.* at 15–16.

## II. DISCUSSION

### A. Standard of Review

■ A motion for judgment on the administrative record under RCFC 52.1 differs from motions for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment on the administrative record. *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1355–57 (Fed.Cir.2005); *Fort Carson Supp. Servs. v. United States,* 71 Fed.Cl. 571, 585 (2006).

Rather, a motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review. *See Fort Carson,* 71 Fed.Cl. at 585; *Greene v. United States,* 65 Fed.Cl. 375, 382 (2005); *Arch Chemicals, Inc. v. United States,* 64 Fed.Cl. 380, 388 (2005). Factual findings are based on the evidence in the record, "as if [the Court] were conducting a trial on the record." *Bannum,* 404 F.3d at 1357; *see also Carahsoft Tech. Corp. v. United States,* 86 Fed.Cl. 325, 337 (2009); *Gulf Group Inc. v. United States,* 61 Fed.Cl. 338, 350 (2004).

 Decisions by a Secretary acting through a correction board, which involve the legal entitlement to money and are thus cognizable by our Court, *see Voge v. United States,* 844 F.2d 776, 780–81 (Fed.Cir.1988), will be overturned if they are arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See, e.g., Godwin v. United States,* 338 F.3d 1374, 1378 (Fed. Cir.2003); *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998); *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *Greene,* 65 Fed.Cl. at 382–83. This standard "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157 (emphasis in original). If the Court finds that an officer has a clear-cut, legal entitlement to a position, the Court can award that individual pay for the position and appropriate collateral relief to which he had an entitlement. *See Lewis v. United States,* 458 F.3d 1372, 1377 (Fed.Cir.2006); *Skinner v. United States,* 219 Ct.Cl. 322, 332, 594 F.2d 824 (1979).

**B. Substantial Evidence Supports the Board's Decision**

Captain Brooks focuses his attention on the Board's conclusions concerning the reason the Surgeon General rescinded his appointment as CPO. Pl.'s Mot. at 9–10, 13. Before analyzing this specific ground for challenging the BCCCR's decision, some discussion of how these particular issues were injected into this matter is warranted. When the case was first before the Court on dispositive motions, an administrative record had yet to be assembled. The Board's initial report concluded—and the Court later agreed, *see Brooks,* 65 Fed.Cl. at 141–43–that the Surgeon General had the power to appoint a CPO, notwithstanding that the position carried a flag officer grade of 0–7. AR at 285–86. The BCCCR did not mention any action of the Surgeon General to revoke the appointment; instead, the Board noted that the Surgeon General's Acting Chief of Staff called plaintiff to inform him the selection memorandum was sent in error, and the Board concluded that the LOR "stopped the selection process and issuance of the Personnel Order which may have" promoted plaintiff. *Id.* at 285–86. The letter from the Secretary's designee rejecting the recommended relief stated without elaboration that "the Office of the Surgeon General rescinded the appointment of" plaintiff, *id.* at 288, and wrongly assumed that the Secretary's approval was needed for the promotion. *Id.* at 289; *see Brooks,* 65 Fed.Cl. at 151.

The Court determined that the issuance of a Personnel Order by the DCP was merely a ministerial act, and that the Surgeon General—vested with the power to appoint a CPO—had appointed Capt. Brooks by ordering the issuance of this document. *Id.* at 147–48. The Court also recognized that a CPO "may be removed at any time as the [Surgeon General] may direct," *see* AR at 255 (§ F.4 of PHS Personnel Instruction 6), and that "[t]here appears to be no limit on the Surgeon General's exercise of this discretion, except from external sources such as anti-discrimination laws or Constitutional provisions." *Brooks,* 65 Fed.Cl. at 148. At that time, based on the documents before the Court, "an outright revocation [did] not appear to have been directed by the Surgeon General." *Id.* at 150. Assuming that the Surgeon General never expressly revoked his appointment of Capt. Brooks, the Court recognized that any monetary relief may turn on when Capt. Brooks's appointment may have been *effectively* revoked. The initial remand was to allow the BCCCR to make this deter-

mination, and the Court drew the Board's attention to issues concerning the impact of the LOR on the subsequent chain of events, as relevant to this inquiry. *See id.* at 150, 152.

One of these questions pertained to the topic of Secretarial approval, *id.*, which the Surgeon General may have sought as a matter of internal (perhaps informal) policy even if not legally obligated to do so. In its abbreviated and indirect response to the question whether the LOR was the reason the Secretary's approval was not sought, the BCCCR stated its "contention" was that "allegations of misconduct . . . resulted in the issuance of the [LOR], which ultimately led to the Surgeon General's rescission of his selection." AR at 310. The Court took this to mean that the BCCCR found that the LOR was the reason the appointment was rescinded, and when remanding for a remedial recommendation employed this as the premise for specific questions directed to the Board. *See* Order (Mar. 29, 2006), 2006 WL 5629142 at *4. In recommending against any further correction to Capt. Brooks's records, on the second remand, the BCCCR "concluded that there is insufficient evidence to definitively conclude either that the LOR was the sole reason for the Surgeon General's decision to rescind . . . or that there were reasons other than the LOR," and based the decision to rescind the appointment on unspecified "facts indicating poor judgment and potential misconduct by Capt. Brooks." AR at 429–30. The Board relied on the fact that the Surgeon General's rescission memorandum cited "recent discoveries of misconduct" but did not mention the LOR, *see* AR at 378, and on a declaration of the Deputy Surgeon General that pointedly refused to directly answer the question whether the LOR was the reason Secretarial approval was not sought, *see* AR at 386, but instead referenced the unexplained "discovery of facts indicating poor judgment and potential misconduct" which the Deputy gave as the reason for the rescission. *Id.* at 385–86; *see id.* at 429–30.

The result is that the Board's responses to some of the specific questions are far from clear, although in some cases this may be a function of the questions themselves being infelicitously phrased.[6] The BCCCR might have been attempting to distinguish between the *allegation* that Capt. Brooks's conduct violated the Privacy Act, and the issuance of an LOR *finding* such a violation—determining no error or injustice occurred because the mere allegation was enough to trigger the subsequent actions, regardless of whether an LOR was issued. But the Board fails to explain this. Or the BCCCR may have believed that Capt. Brooks's use of his former subordinate's records reflected "poor judgment and potential misconduct" regardless of whether the Privacy Act was violated. This is the litigation position taken by the government, *see* Def.'s Cross–Mot. at 12–13, but it rests on speculation that the Board in turn speculated that the Deputy Surgeon General's vague reference was not to the "poor judgment" of violating an officer's rights under the Privacy Act. Or perhaps the Board took the Deputy Surgeon General's declaration to mean that some "poor judgment and potential misconduct" were discovered that were unrelated to the disclosure of the subordinate's records. This is the conclusion that plaintiff argues is unsupported by the record. *See* Pl.'s Mot. at 13.

▮▮▮ The Board's findings on these particular matters may be difficult to construe, but they are also irrelevant due to a finding that is undoubtedly supported by substantial evidence. The BCCCR determined that the Surgeon General rescinded the appointment by a memorandum dated September 29, 2000, two days before the appointment was to be effective. *See* AR at 301. Copies of this memorandum are included in the record. AR at 378, 380, 382. Captain Brooks does not contest the authenticity of this document, but rather makes the argument, with not a shred of legal support, that the rescission document is ineffective until delivered to him. *See* Pl.'s Mot. at 15 n. 6; Pl.'s Reply at 4; Tr. (Jan. 9, 2008) at 23. Plaintiff, of course, was told prior to the issuance of this document

---

6. Among other things, the Court failed to appreciate the ambiguity in the Board's "contention" regarding the reason Secretarial approval was

not sought, which could have meant that the "allegations of misconduct" were what led to the rescission. *See* AR at 301.

that he had not been appointed to the CPO position, *see* AR at 285, and he had never assumed the position. There is no legal basis upon which to conclude that the revocation of the appointment, before the start date, was not effective.

■ Plaintiff has not identified any law, regulation, or Constitutional provision that the Surgeon General may have violated when he changed his mind about appointing Capt. Brooks to be CPO. Plaintiff cites *Law v. United States*, 11 F.3d 1061 (Fed.Cir.1993), for the proposition that an officer is entitled to back pay if his selection for a promotion has been unlawfully derailed. *See* Pl.'s Mot. at 11 (citing *Law*, 11 F.3d at 1064–65). The Federal Circuit in *Law* held that while our Court lacks the authority to *grant* a promotion, we may "recognize that it had occurred" as a matter of law. *Law*, 11 F.3d at 1065. But in *Law*, as here, a decision to promote was reversed by an official with the discretionary authority to do so, and no procedural restrictions on this discretion were violated. *Id.* at 1066–68. If the official with the power to appoint an individual to a position makes the appointment, but a *subordinate* denies the promotion due to an improper construction of a law or regulation, the denial can be found ineffective and the individual denied the appointment can receive back pay. *See Lewis v. United States*, 458 F.3d 1372, 1378 (Fed.Cir.2006). When it initially appeared that the Surgeon General had not revoked the appointment of Capt. Brooks, this seemed to be the sort of case plaintiff was presenting.

■ It turns out, however, that the official with the power to revoke did indeed rescind the appointment of Capt. Brooks. The case thus falls in the well-established category of cases holding that our Court cannot second-guess the discretionary decisions of an official wielding the appointment or removal power. *See id.; see also Dysart v. United States*, 369 F.3d 1303, 1316–17 (Fed.Cir.2004) (finding there was no entitle-ment to a position when the plaintiff was removed from a promotion list by an official exercising delegated authority); *D'Arco v. United States*, 194 Ct.Cl. 811, 815–16, 441 F.2d 1173 (1971) (holding there was no entitlement to a position that was terminable at will, when the Secretary of the Navy withheld a recess appointment commission); *Doggett v. United States*, 207 Ct.Cl. 478, 481–82 (1975) (finding no entitlement to a field advancement promotion when the recommendation was withdrawn due to an investigation which ultimately resulted in an acquittal, due to the implied "power to withdraw the recommendation at any time before it is acted on"). As the Supreme Court explained: "Where an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern, because the act is at any time revocable...." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162, 2 L.Ed. 60 (1803); *see also Brooks*, 65 Fed.Cl. at 148 (quoting same).

■ Plaintiff argues that once an error has been established that could have affected the decision to rescind his promotion, the burden falls on the defendant to show that this action "would have occurred in any event." Pl.'s Mot. at 13. Captain Brooks misstates this "harmless error" rule, which does not require proof that a promotion would not have happened, but rather that it was *unlikely*. *See Engels v. United States*, 230 Ct.Cl. 465, 470, 473, 678 F.2d 173 (1982). In any event, the line of decisions applying this approach have no bearing on plaintiff's case.[7] The rule was not adopted for—and to the Court's knowledge has never been employed in—cases in which an officer argues an entitlement to a *promotion*. Rather, the rule was developed for another class of cases in which an officer may receive pay for a position despite not serving in the position-when a decision not to promote is void, and the decision resulted in the involuntary discharge of an officer. These cases do not involve retroactive promotions, but rather the correction of records to no longer indi-

7. This is not, however, because the rule used in those cases was superseded by statute, *cf. Porter*, 163 F.3d at 1324 (holding that 10 U.S.C. § 628 eliminates the "harmless error rule" in certain cases), as the PHS is not governed by title 10 of the U.S. Code. *See Godwin v. United States*, 338 F.3d 1374, 1380 n. 3 (Fed.Cir.2003) (holding that rule still applies to the Coast Guard, which is governed by title 14, not title 10).

cate that a promotion was considered and denied, and a reinstatement of the discharged officer to his former position. *See Engels*, 230 Ct.Cl. at 476, 678 F.2d 173. Captain Brooks is not alleging that by being denied a general promotion in rank he was illegally discharged, but rather that he failed to be appointed to a particular office. No precedent supports application of the "harmless error" rule in such a discretionary context.

Moreover, the Court is not persuaded that this rule—placing the burden on the government to prove the harmlessness of an error connected to a pass-over decision—can apply to a PHS promotion decision. The rule was based on particular military statutes that do not apply to the PHS. *See Skinner v. United States*, 219 Ct.Cl. at 329, 594 F.2d 824 (noting "legal right to be so graded on a 'fair and equitable' basis," citing the former 10 U.S.C. §§ 3442(c), 8442(c) (repealed 1980)); *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804 (1979) (citing same); *Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir. 1990); *Weiss v. United States*, 187 Ct.Cl. 1, 5, 408 F.2d 416 (1969) (finding that Navy selection board statute's reference to "records" embodied Congressional purpose that these records "be complete and not misleading," citing the former 10 U.S.C. § 5706 (repealed 1980)). Plaintiff has not identified any statutes or regulations requiring that the Surgeon General be fair and not err when selecting individuals for Chief Professional Officer slots.

In sum, once the official with the discretion to revoke the appointment did so, plaintiff was no longer legally entitled to the CPO position. Whether the Surgeon General based his decision on the LOR is irrelevant, in the absence of any law or regulation preventing him from exercising his discretion on such a basis. With the fact of revocation established by substantial evidence, the infirmity of the BCCCR's other findings is beside the point. This is not to say that the particular questions were unimportant to the Board's proceedings. After all, the Secretary, acting through the Board, could have used his discretion to retroactively promote Capt. Brooks, as an official acting through a

correction board may do things this Court cannot. *See Voge*, 844 F.2d at 781–82; *Skinner*, 219 Ct.Cl. at 332–33, 594 F.2d 824; *Koster v. United States*, 231 Ct.Cl. 301, 307, 685 F.2d 407 (1982). And if the Secretary, acting through the BCCCR, had decided to correct plaintiff's records to reflect an October 2000 promotion, but either refused to pay back salary or subsequently changed the records back, these decisions would have been matters for our Court. *See Caddington v. United States*, 147 Ct.Cl. 629, 631–35, 178 F.Supp. 604 (1959); *King v. United States*, 65 Fed.Cl. 385, 392 (2005) (holding "that when a Correction Board makes a correction that triggers payments to an individual under a money-mandating statute, that individual has a claim in our Court for those benefits when the Board later reverses itself"). But here, the Surgeon General exercised his discretion to rescind the appointment of Capt. Brooks before the position was assumed, *see* AR at 378, and the BCCCR rested its decision to deny any further remedy on the basis of this revocation. *See id.* at 430 (one member noting the Surgeon General "also had the authority to rescind the appointment, which he did prior to the effective date," and another "understanding that this position serves at the discretion of the Surgeon General and can be revoked at any time"). Substantial evidence supports the decision, and accordingly plaintiff's motion for judgment on the record is **DENIED** and defendant's cross-motion for judgment is **GRANTED.**

### III. CONCLUSION

Captain Anthony J. Brooks sought a correction of his Public Health Service records to indicate that he held the position of Chief Pharmacist Officer, and an award of back pay and associated benefits. Plaintiff argued that a Letter of Reprimand resulted in an error and an injustice when he was denied the position. The Board for Correction of PHS Commissioned Corps Records refused his request, finding that the official with the discretionary power to appoint and remove CPOs rescinded plaintiff's appointment prior to the effective date. Substantial evidence supports this decision, and no laws or regulations were violated by the rescission. For the foregoing reasons the government's

cross-motion for judgment on the administrative record is **GRANTED,** and plaintiff's motion for judgment on the administrative record is **DENIED.** The Clerk shall enter judgment accordingly. No costs shall be awarded.

IT IS SO ORDERED.